**Opinion issued November 1, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00693-CV

———————————

## CENTRAL STATES LOGISTICS, INC. D/B/A DILIGENT DELIVERY SYSTEMS, Appellant

## V.

## BOC TRUCKING, LLC AND CLARENCE J. MEYERS, III INDIVIDUALLY AND D/B/A BOC LOGISTICS, Appellees

---

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2014-28384

---

## O P I N I O N

Central State Logistics, Inc. d/b/a Diligent Delivery Systems filed suit against

BOC Trucking, LLC and Clarence J. Meyers III, alleging breach of contract for a

covenant not to compete, tortious interference with existing contract, and violations

of the Texas Uniform Trade Secrets Act. At trial, the trial court granted a directed verdict on Diligent's trade secrets claim. The jury found liability and awarded damages on Diligent's remaining claims. After trial, the trial court granted Meyers's motion for judgment notwithstanding the verdict on Diligent's tortious interference claim. In three issues on appeal, Diligent challenges the trial court's directed verdict on its trade secrets claim and its judgment notwithstanding the verdict on its tortious interference claim. In three issues on cross-appeal, BOC Trucking argues the evidence is insufficient to support the jury's determination of lost profits, the covenant not to compete is too broad to be enforceable, and the covenant not to compete is not ancillary to an otherwise enforceable agreement.

We affirm, in part, and reverse and render, in part.

## Background

Diligent is a transportation logistics company. It acts as a broker between companies that need freight transported and carrier companies to transport the freight. BOC Trucking is a freight transporting company. Meyers is the president and majority owner of BOC Trucking.

In February of 2013, Diligent and BOC Trucking entered into a broker-carrier agreement. Under the terms of the agreement, Diligent would use BOC Trucking as one of the carriers when Diligent's clients needed freight transported. BOC Trucking agreed, as part of the contract, not to attempt to divert the business of any

2

client of Diligent's to any competitor of Diligent for the duration of the contract and for two years after BOC Trucking's last contact with any client of Diligent.

Ameriforge was one of Diligent's clients. Diligent arranged for BOC Trucking to transport some of Ameriforge's transport. About ten months after BOC Trucking began transporting Ameriforge's freight, Meyers formed a sole-proprietor logistics company. He used the name BOC Logistics as an assumed name for his work. BOC Logistics obtained Ameriforge as a client and used BOC Trucking to transport its freight.

In April of 2015, Diligent filed suit against BOC Trucking and Meyers. It asserted claims of breach of contract against BOC Trucking, tortious interference with existing contract against Meyers, and violations of the Texas Uniform Trade Secrets Act against both BOC Trucking and Meyers. The case went to trial. At the close of the evidence BOC Trucking and Meyers moved for a directed verdict on Diligent's trade secrets claim. Diligent asserted it had presented evidence that BOC Trucking and Meyers obtained Diligent's pricing information for Ameriforge and used that information for BOC Logistics to undercut Diligent's pricing. The trial court disagreed that such evidence was in the record and granted a directed verdict on the claim.

The jury found BOC Trucking liable for breach of contract and Meyers liable for tortious interference with existing contracts. After trial, Meyers moved for a

3

directed verdict for the jury's questions regarding liability and damages for the tortious interference claim. For liability, Meyers argued that, because he was an agent of BOC Trucking, he could only be found to have interfered with BOC Trucking's contract with Diligence if Diligence established that Meyers's actions were so contrary to BOC Trucking's interests that Meyers could only have been motivated by personal interests. Meyers argued that there was no such evidence in the record and that, accordingly, he was entitled to judgment notwithstanding the verdict on the claim. The trial court agreed.

Diligent filed a notice of appeal of its claims against Meyers. In its brief, Diligent indicated that BOC Trucking had filed for bankruptcy. We stayed the appeal, pending the bankruptcy. After we received notice that the bankruptcy case had closed, we reinstated this appeal. After the appeal was reinstated, BOC Trucking filed a notice of appeal, which we held was timely.[1]

## Breach of Non-Solicitation Agreement

In its second issue on cross-appeal, BOC Trucking argues the trial court erred by denying its motion to reform or void the judgment.

---

[1]     *See Cent. States Logistics, Inc. v. BOC Trucking, LLC*, No. 01-16-00693-CV, 2018 WL 3120178, at *1 (Tex. App.—Houston [1st Dist.] June 26, 2018, order).

4

## A.    Standard of Review

Whether a covenant not to compete is enforceable as written or must be modified to be enforceable is a question of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 792 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

When a question of law has been raised in a full evidentiary hearing, "the trial court frequently must resolve questions of fact before deciding the jurisdiction question." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (disputed issue of personal jurisdiction). In that circumstance, factual disputes are subject to legal and factual sufficiency challenges and conclusions of law are subject to a legal sufficiency challenge. *Id.*; *see also Dale v. Hoschar*, No. 05-13-01135-CV, 2014 WL 3907997, at *1 (Tex. App.—Dallas Aug. 12, 2014, no pet.) (mem. op.) (applying *BMC Software* standard of review to enforceability of covenant not to compete). When, as here, the trial court does not issue findings of fact and conclusions of law, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795. A party can challenge the implied findings for legal and factual sufficiency, however. *Id.*

When considering whether legally sufficient evidence supports a challenged finding, we must consider the evidence that favors the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could

not.  *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005).  We view the evidence in the light most favorable to the trial court's findings and indulge every reasonable inference to support them.  *Id.* at 822.  We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact.  *Id.* at 810.

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Arias v. Brookstone, L.P.,* 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  When the appellant challenges an adverse finding on an issue on which it did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust.  *See Cain,* 709 S.W.2d at 176; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.,* 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In this situation, the trial court was the sole judge of the credibility of witnesses and the weight to be given to their testimony.  *See BMC Software*, 83 S.W.3d at 795 (recognizing responsibility for trial court to resolve questions of fact before ruling on questions of law); *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199,

208 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding, when it acts as fact finder, trial court is sole judge of credibility of witnesses and weight to be given to testimony). As long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. *City of Keller,* 168 S.W.3d at 822.

## B. Res Judicata

Diligent asserts that res judicata applies as a bar to BOC Trucking's appeal. Diligent argues, "The order allowing Diligent's claim for $210,950 for breach of a valid agreement (which was fully litigated in the Trial Court below and not set aside in the bankruptcy proceeding) is claims preclusive between Diligent and BOC Trucking." BOC Trucking complains this argument is improper because Diligent's proof for its argument lies outside the record. *See Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("We cannot consider documents attached to an appellate brief that do not appear in the record."). Diligent argues BOC Trucking waived its complaint by relying on bankruptcy documents outside the appellate record to establish it timely filed a notice of appeal. It also argues this Court can take judicial notice of the bankruptcy records attached to its brief. *See Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 209 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (holding courts can take judicial notice of documents filed in another case but not truth of factual statements within

7

documents). We do not need to resolve this dispute because, even assuming we can properly consider them, the documents Diligent attaches to its brief do not establish claim preclusion.[2]

Certain orders of a bankruptcy court can bar subsequent suits for claims asserted in the bankruptcy court. To be claim preclusive, however, (1) both cases must involve the same parties, (2) the bankruptcy court must have had jurisdiction over the claim, (3) the action taken by the bankruptcy court must function as a final judgment on the merits, and (4) the cause of action must be the same. *In re Gonzalez*, 372 B.R. 837, 844 (Bankr. W.D. Tex. 2007). For the third element, claim preclusive orders by the bankruptcy court can include an order on a claim allowance, *id.*; "orders authorizing the sale of part of the estate or confirming such sale," *In re Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993); an "order confirming a proposed plan of reorganization is a final judgment," *In re Artho*, 587 B.R. 866, 881 (Bankr. N.D. Tex. 2018); and a court-approved settlement agreement, *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 501–02 (5th Cir. 1994).

The order Diligent attaches to its brief is an "Order Closing Case." The order declares, "The estate has been fully administered." The actions taken by the bankruptcy court in the order are to discharge the trustee and to cancel the trustee's

---

[2] We also express no opinion about whether a subsequent bankruptcy can act as a bar to a timely appeal of a *prior* judgment.

8

bond. Nothing in this order can be described as acting on the merits regarding Diligent's breach of contract claim. Accordingly, we hold Diligent has failed to establish that the bankruptcy court took any action that could give rise to claim preclusion in this appeal.

**C.    Analysis**

The jury found that BOC Trucking breached the covenant not to compete and awarded damages. After trial, BOC Trucking filed a motion to reform or void the judgment, arguing the covenant not to compete was unenforceable. The trial court denied the motion.

To be enforceable, a covenant not to compete must be ancillary to an otherwise enforceable agreement and its limitations as to time, geographical area, and scope of activity must be reasonable. TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011). "The hallmark of enforcement is whether or not the covenant is reasonable." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011). To be reasonable, the limitations on trade cannot "impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." BUS. & COM. § 15.50(a). If a covenant not to compete is not reasonable, the trial court must reform it to the extent necessary to make it reasonable. TEX. BUS. & COM. CODE ANN. § 15.51(c) (West 2011). Once it reforms a covenant not to compete, the

trial court cannot award damages for injuries incurred from violation of the covenant before it was reformed. *Id.*

Diligent argues that BOC Trucking bore the burden of establishing the covenant not to compete was not enforceable. Who has the burden of proof on proving or disproving the enforceability turns on the type of contract to which the covenant not to compete is ancillary. *Id.* § 15.51(b). We do not need to reach who had the burden of proof in this case, however, because we hold the evidence establishes that the time period for the agreement is unreasonable regardless of the party that bore to burden.

"Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). At trial, Tony Carter, the chief operations officer, testified that the time period for the covenant not to compete was "for 24 months from the time that this Carrier Agreement is terminated by either party." That is not what the covenant provides.

Under the agreement, Diligent was identified as "Broker" and BOC Trucking was identified as "Carrier." The covenant provides,

> For a period of twenty four (24) months following the Carrier's last contact with any client or client[s] of Broker the Carrier agrees it shall not either directly or indirectly influence or attempt to influence customers or clients of Broker (or any of its present or future subsidiaries or affiliates) for whom the Carrier has rendered services pursuant to this Agreement to divert their business to the Carrier or any

individual, partnership, firm, corporation or other entity then in competition or planning to be in competition in the future with the business of Broker or any subsidiary or affiliate of Broker.

In this paragraph as well as the preceding paragraph, the contract draws a distinction between "client[s] of Broker" and "clients of Broker . . . for whom the Carrier has rendered services pursuant to this Agreement." The former category is broader and includes clients of Diligent with which BOC Trucking did not interact as a result of the contract. Under the terms of the covenant not to compete, then, the covenant lasts for two years after BOC Trucking's last contact with any client of Diligent, regardless of whether BOC Trucking had had any previous interactions with them and regardless of whether the interaction was during or after the agreement. This creates the potential for a covenant not to compete that does not end. Adding to this, Carter testified at trial that Diligent considered its client base to be a trade secret. Accordingly, BOC Trucking has no way of being able to determine when it has had its last contact with a client of Diligent.[3]

A covenant not to compete that extends for an indeterminable amount of time is not reasonable and, as a result, is not enforceable. *Cardinal Pers., Inc. v. Schneider*, 544 S.W.2d 845, 847 (Tex. Civ. App.—Houston [14th Dist.] 1976, no writ); *see also* BUS. & COM. § 15.51(c) (requiring limitations on time of covenant

---

[3]    Nor would Diligent be able to determine this, since there is no requirement for BOC Trucking to provide Diligent with a list of entities for whom it hauls freight during or after the term of the contract.

not to compete to be reasonable).  In *Cardinal*, the covenant not to compete stated that it lasted for six months after the employee's termination.  544 S.W.2d at 846–47.  Another provision, however, extended the time period until six months after the employee stopped being in violation of the agreement, "whether voluntarily or by injunction."  *Id.* at 847.  The court held this rendered the time period indeterminable because the time period could be ascertained "only by hindsight; i.e., the duration of the covenant cannot be determined until the jurisdiction of the trial court is invoked and its equity powers exercised."  *Id.*

A similar fault exists here.  There is no discernible method for BOC Trucking to know when the two-year time period has expired because there is no means for BOC Trucking to know when it has had its "last contact with any client or client[s] of" Diligent.  Because BOC Trucking cannot determine when the time of the covenant not to compete has ended, it cannot be enforced as written.  *See id.*

We sustain BOC Trucking's second issue.

## Tortious Interference

In its first issue, Diligent argues the trial court erred by granting judgment notwithstanding the verdict on liability for its tortious interference with existing contract claim against Meyers.

## A.       Standard of Review

When a motion for judgment notwithstanding the verdict is premised on the legal sufficiency of the evidence to support a claim, rulings on a motion for JNOV and directed verdict are reviewed under the same legal-sufficiency test as are appellate no-evidence challenges.  *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 395 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review.").  Such a no-evidence challenge "'will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.'" *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

In our legal-sufficiency review, "we must view the evidence in a light that tends to support the finding of disputed fact and disregard all evidence and inferences to the contrary." *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).  With that evidence, we review "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. . . .  [L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable

jurors could, and disregard contrary evidence unless reasonable jurors could not."

*City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

**B.     Analysis**

The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the plaintiff's damage, and (4) that actual damage or loss occurred.  *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995).  "When the defendant is both a corporate agent and the third party who allegedly induces the corporation's breach, the second element is particularly important."  *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456–57 (Tex. 1998).  This is because a party cannot tortiously interfere with its own contracts and business entities can only act through their agents.  *Cmty. Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 690 (Tex. 2017).

> Thus, under our decision in *Holloway*, when the defendant is both a corporate agent and the interfering tortfeasor, the plaintiff carries the burden of proving as part of its "prima facie case" that the agent "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests" and thus could not have been acting within the scope of his agency at the time of the interference.

*Id.* at 691 (quoting *Holloway*, 898 S.W.2d at 796).  "Furthermore, an agent cannot be held to have acted against the principal's interests unless the principal has objected."  *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003).

Meyers is the president and majority owner of BOC Trucking. Diligent argues that it carried its burden of establishing that Meyers was not acting within the scope of his agency because he was operating as the agent of another business: BOC Logistics. First, these are not necessarily mutually exclusive. *See Griffith Techs., Inc. v. Packers Plus Energy Servs. (USA), Inc.*, No. 01-17-00097-CV, 2017 WL 6759200, at *4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, no pet.) (holding evidence showing woman travelled to Texas as agent of subsidiary company did not disprove she also travelled as agent of parent company for same trip). Second, Meyers necessarily performed the actions about which Diligent complains in his capacity as agent for BOC Trucking. To establish its claim, Diligent presented evidence that Meyers decided both to breach the agreement with Diligent and to use his own logistics company instead. Both of these acts Meyers performed as an agent of BOC Trucking. There is no evidence of any prior action by Meyers (as agent of his logistics business) that "induced" himself (as agent of BOC Trucking) to engage in the complained of acts.

Diligent further argues that Meyers waived any complaint that he is not liable in his capacity under his assumed name of BOC Logistics because he did not file a verified answer asserting he was not liable in the capacity in which he was sued. *See* TEX. R. CIV. P. 93(2) (requiring verified pleading to assert defendant is not liable in capacity in which he is sued). This is not a question of a defendant challenging

15

capacity, however. It was Diligent's burden to prove that Meyers "acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Cmty. Health*, 525 S.W.3d at 691. The fact that Diligent alleged that Meyers operated a logistics business under an assumed name does not affect this burden.

We overrule Diligent's first issue.[4]

## Trade Secrets

In its third issue, Diligent argues the trial court erred by granting a directed verdict on its trade secrets misappropriation claim.

## A. Standard of Review

We review directed verdicts under the same legal-sufficiency standard that applies to no-evidence summary judgments. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (citing *King Ranch*, 118 S.W.3d at 750). We sustain a legal-sufficiency point when (1) there is a complete absence of evidence regarding a vital fact, (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. We consider the evidence in the

---

[4]   Because this is sufficient to support the trial court's ruling, we do not need to reach Diligent's second issue, arguing the trial court erred by granting judgment notwithstanding the verdict on damages for this claim.

16

light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence and inferences unless a reasonable jury could not. *Id.* at 827. Conclusive evidence cannot be disregarded. *See id.* at 816 ("Evidence is conclusive only if reasonable people could not differ in their conclusion.").

The nonmovant bears the burden to identify evidence before the trial court that raises a genuine issue of material fact as to each challenged element of its cause of action. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014). A directed verdict in favor of the defendant is proper if the plaintiff "fails to present evidence raising a fact issue essential to [its] right of recovery," or the plaintiff "admits or the evidence conclusively establishes a defense to [its] cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). We may affirm a directed verdict on any ground that supports it. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 443 (Tex. App.—Dallas 2002, pet. denied).

## B. Analysis

Diligent brought a claim for trade secrets misappropriation under the Texas Uniform Trade Secrets Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.001 (West 2011). Under the act, a party can obtain damages for trade secrets misappropriation. TEX. CIV. PRAC. & REM. CODE ANN. § 134A.004(a) (West Supp. 2018). The act has multiple, disjunctive definitions of "misappropriation." *See* TEX.

17

CIV. PRAC. & REM. CODE ANN. § 134A.002(3) (West Supp. 2018). Diligent's claim

is based on the definition as

> use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was . . . acquired under the circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secret.

*Id.* § 134A.002(3)(B)(ii)(b).

When BOC Trucking moved for directed verdict on Diligent's trade secrets

claim, the trial court asked Diligent what evidence it was relying on to establish

misappropriation. The following exchange occurred:

> [Diligent's Attorney]: The evidence as to trade secret was Mr. Carter's testimony that the contact information with the clients, including Ameriforge, pricing information and the kinds of logistics needs that they have are confidential and not readily available to the public, which is certainly enough evidence to submit the question to the jury.
>
> THE COURT: What is your evidence of use of the trade secret?
>
> [Diligent's Attorney]: If you look at Exhibits 4 and 5, you will see that they undercut our pricing, and I plan to go through that in my closing.
>
> THE COURT: How do you link up the pricing with Mr. Meyers when Mr. Meyers testified that as a carrier -- well, actually, Mr. Carter testified that carriers weren't privy to pricing information.

[Diligent's Attorney]: Correct. But Mr. Meyers testified that he had discussed our contract with Ameriforge,[5] and so the implication is that he got information on pricing and used that to undercut us.

THE COURT: Yeah, I'm uncertain that the jury has anything to base a finding on in that regard, in terms of evidence.

Diligent's theory for misappropriation, then, was that Meyers had obtained Diligent's pricing information for Ameriforge and used it to undercut Diligent. On appeal, Diligent argues it presented sufficient evidence of misappropriation: "Meyers executed the Agreement knowing it prevented back solicitation but formed BOC Logistics and began brokering loads for Ameriforge. This constitutes improper means as Meyers breached BOC Trucking's obligation to limit the use of this information." The jury found that BOC Trucking breached the no-solicitation provision of its contract with Diligent. Proof of breach of this provision, however, is not proof that Meyers used Diligent's confidential pricing information for Ameriforge.

We overrule Diligent's third issue.

**Conclusion**

We affirm the trial court's disposition of Diligent's trade secrets and tortious interference claims. In contrast, courts cannot award damages for breach of a covenant not to compete that is not reasonable. BUS. & COM. § 15.51(c).

---

[5] After a review of the reporter's record, we find no testimony from Meyers consistent with this assertion.

19

Accordingly, we reverse the trial court's award of damages on Diligent's breach of contract claim. The contract that formed the basis of Diligent's breach of contract claim allowed the prevailing party in a suit to recover attorneys' fees and costs. Because Diligent is no longer the prevailing party in this suit, the awards of attorneys' fees and costs must also be reversed. Accordingly, we render a take-nothing judgment against Diligent.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Keyes, and Higley.