AMERICAN QUARTER HORSE
ASSOCIATION, Appellant,

v.

Matlock ROSE, Appellee.

No. 17658.

Court of Civil Appeals of Texas,
Fort Worth.

June 20, 1975.

Pope, Hardwicke, Christie & Montgomery, Fort Worth, Underwood, Wilson, Sutton, Berry, Stein & Johnson and R. A. Wilson, Amarillo, for appellant.

Murad & Steimel, Fort Worth, Webb, Stokes & Sparks and Tom Webb, San Angelo, for appellee.

## OPINION

MASSEY, Chief Justice.

This is a case in which Matlock Rose, plaintiff, brought suit for damages against American Quarter Horse Association (hereinafter termed AQHA) in Tarrant County, Texas. AQHA filed its plea of privilege to have the suit transferred to Potter County as its place of residence. Following trial the plea of privilege was overruled and AQHA appealed.

We reverse and order transfer of the cause.

Involved is Vernon's Ann.Tex.Civ.St. Art. 1995, "Venue, general rule", providing that no person who is an inhabitant of this State shall be sued out of the county in which he has his domicile, with certain exceptions, among which are the provisions of Section or Subsection 23, "Corporations and associa-tions". Thereby is provided that suit against a private association, etc., may be brought in the county in which arose the cause of action or a part thereof. It is the contention of Matlock Rose that a part of his total cause of action against AQHA arose in Tarrant County where he brought his suit. This contention was sustained by the trial court in overruling the plea of privilege.

In the instant case the right to retain venue in the county of suit is dependent upon Mr. Rose's discharge of the burden of a plaintiff to show by a preponderance of the evidence that he not only has a cause of action against the defendant, but that a part of the transaction creating his right occurred in the county of suit. McDonald, Texas Civil Practice, Sec. 4.30.1, "Art. 1995(23) and (27). Suits against Corporations and Associations. . . . § 4.30.2. —(I) Where Cause of Action or Part Thereof Accrued."

In essence, the suit against AQHA is based upon its wrongful breach of contract by unjustified suspension of Matlock Rose from membership in the association with injury to Rose's property rights a consequence.

In America today the Quarter-Horse is probably the most popular type of horse. Individuals and corporations are formed for the purpose of breeding, showing, selling, etc., animals "admitted to registry" by the AQHA. Persons organizing shows and rodeos find it necessary to restrict participation to animals on the register of AQHA and to restrict entitlement to show or judge animals shown by others at these shows and rodeos to individuals who have been admitted to membership and are in good standing as a member of AQHA. This is substantially because of the system of giving and publicizing the award of "points" to the horses registered on the books of AQHA. These points accrue to an individual horse when it is shown by and judged by members of AQHA at "AQHA approved shows",

etc. AQHA refuses to award "points" to any horse not so registered, not shown by, not judged by a member in good standing, and not accrued pursuant to participation at a show or other exhibition which is not "AQHA approved". Of course the interests of AQHA and its members in good standing are aided by the system. Very many members who are breeders, trainers or exhibitors gain through enhancement of the value of animals bought or sold because of the number of "points" won by them, or by contracts to train horses for others because an animal or animals trained by them have been awarded "points". There are many other possible examples, of which these are only a few. A recognized skilled or successful breeder or trainer of AQHA registered horses can make money because he is such, and he cannot become so recognized unless he is a member of AQHA. Such a person was Matlock Rose.

By reason of his suspension from membership in AQHA Mr. Rose could neither show nor judge any AQHA registered horse at any "AQHA approved show," and the evidence in the record before us showed that he did fail to earn money because of his suspension as a member by AQHA.

The occurrence giving rise to Rose's suspension took place September 28, 1973, at an "AQHA recognized" horse show at Oklahoma City. There Mr. Rose's horse, Charlie Polite, was entered and shown. Charlie Polite would have won a sizable number of points because he was named Grand Champion Stud in the event at which he was shown, except for the fact that the urine test given him immediately thereafter was a "positive butazolidine test", i. e., there was indicated presence of the drug Butazolidin in his system as of the time he had been shown. Because of the results of the test the "points" awardable were withheld. Culmination of the affair was that, pursuant to action taken at a meeting held for the purpose by officials of AQHA at Amarillo, Potter County, Texas, on November 27, 1973, Mr. Rose was suspended from mem-

bership in the association for the period of six (6) months, beginning as of date of such November hearing, "for violation of Rule 299 of the 1973 AQHA Handbook".

It was on September 26, 1973, two days before the sample of urine was taken from Charlie Polite at Oklahoma City, that a veterinarian had administered to Charlie Polite the drug Butazolidin. The veterinarian, by reason of instruction from Matlock Rose that he should do whatever he might deem necessary, decided that the Butazolidin should be administered. Charlie Polite was "favoring" a hoof, apparently because of lameness resulting from having been shod rather close. Apparently the pain was relieved by the drug. Shortly after it was administered there was no lameness either before, during, or after the conduct of the show at Oklahoma City. Evidence in the record is to the effect that it would be unusual, though not impossible, for the presence of evidence of Butazolidin to have remained in the horse's system as of the time he was shown on September 28th. In this instance it did. Matlock Rose did know that the drug had been administered before the show was held, though he did not learn that the veterinarian had given such a "shot" to Charlie Polite on the 26th until after the veterinarian had administered it.

The Handbook heretofore mentioned is in substance a part of the By-Laws of the membership of AQHA. As between Matlock Rose and AQHA it constitutes part of the contract of each with the other. Rule 299, as a part thereof is the "Show and Contest Rule". Therein are material provisions to the effect that (a) either before or during an approved event no medication shall be caused to be administered to a horse which is of such character as could affect its performance; (b) that upon taking a specimen for testing from a horse exhibited or presented for exhibition with a laboratory report showing the presence of a forbidden drug or medication such shall be prima facie evidence that it had been administered; and (c) that the exhibitor, the

individual signing the entry blank, in the absence of substantial evidence to the contrary, is to be deemed responsible for the condition of the horse and to know all the rules and regulations of the Association.

Rule 35 of the Handbook on "Disciplinary Procedure" provides that any member of AQHA may be suspended whenever it is established that a member has *knowingly and willfully violated any pertinent rule.* Further relevant portion thereof (as part of the parties' contract) is that the decision and action relative to suspension, etc., by the Committee for AQHA shall be final and binding; and that when a member is . . suspended . . . the name and address of the member might be published in the Quarter Horse Journal.

There appeared in the January, 1974, publication, The Quarter Horse Journal, under notice relative to discipline of members of AQHA: "ROSE, MATLOCK, GAINESVILLE, TEXAS, is denied privileges of participation in AQHA approved events for a period of six (6) months, beginning October 17, 1973, for violation of Rule # 299 of the 1973 Official AQHA Handbook pertaining to administration of forbidden drugs, further Mr. Rose is removed from the approved judges list."

By reason of his suspension from membership by AQHA Rose was unable to participate in activities and business at the Fort Worth show held the first week of February, 1974. The evidence in the record shows that there was injury and damage sustained by Mr. Rose as a consequence.

It was by reason thereof that the suit against AQHA was filed and sought to be maintained in Tarrant County.

The evidence was silent upon whether any affirmative action was ever taken in Tarrant County by AQHA other than publication of its magazine for January, 1974. The officials for the Fort Worth show, having learned of Mr. Rose's suspension in a manner now shown by the record, were shown to have denied permission for him to participate in the show activities.

We have concluded that it is of considerable importance to bear in mind the prayer for relief in the petition of Mr. Rose, incorporated for all necessary purposes in his controverting affidavit to the plea of privilege of AQHA. After having alleged facts which are construable both as a foundation for a cause of action for damages because of a breach of contract and as a foundation for a cause of action for damage because of libel on the part of AQHA, the portion relating to damages, and the prayer, continues as follows: "Plaintiff would show, that for the reasons stated above, Defendant has breached its contract . . . . The suspension proceedings against Plaintiff by the Defendant . . . were in breach of this contract . . . . Plaintiff would show the Court that he has been damaged in the monetary sum of . . ., for loss of earnings due to their wrongful suspension, and further, such monetary damages should include punitive damages, in that, Defendant maliciously, willfully and knowingly selected Plaintiff's horses for testing out of hundreds of horses, such ununiform testing and the following harassment evidencing said Defendant's motive. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that . . . (he) have judgment against Defendant for monetary damages sustained as a result of Defendant's acts in a just and equitable amount as the evidence shows, for costs of court and for such other and further relief as Plaintiff may be entitled to under law or in equity."

We deem it obvious from the above that Matlock Rose is not suing AQHA for damages in tort for inducing a breach of contract or refusal to deal with him by the Fort Worth Fat Stock Show in February, 1974. However, it is upon this refusal to deal that right of maintenance of the suit in Tarrant County is contended to be proper. But a cause of action predicated upon such a theory is one in tort. See Restatement of the Law, Torts, Division Nine, "Interfer-

ence With Business Relations", Part 2, "By Refusal, and Causing Refusal, to Deal or Breach of Contract", Chapter 37, Topic 2., "Inducing Breach of Contract or Refusal to Deal" and the Notes thereunder, and all sections thereunder, especially Sec. 766, "General Principle". We cannot construe the pleadings and prayer as presenting a cause of action based thereon.

■ The prayer, as hereinabove noticed, sought general relief in addition to damages. Thereunder any relief appropriate to the facts proved at the trial may ordinarily be granted, and it is for the court to declare the form of relief appropriate under the pleadings and the evidence. But the prayer for general relief does not authorize the court to grant a form of relief which, though consistent with the facts pleaded, would take the defendant by surprise, as for a cause of action not pleaded, etc. In this respect the prayer of the petition should not be read as enlarging the cause of action pleaded so as to embrace one which is not pleaded and/or because of which there is no relief sought; nor when by a construction of the prayer it does not reasonably appear that there was intent to claim such relief. 45 Tex.Jur.2d 455, et seq., "Pleading", Sec. 48, "Relation to facts alleged", and Sec. 49, "General relief". Here the circumstances are such that we could not view the case as one in which the trial court could have rendered the judgment overruling the plea of privilege of AQHA on a theory other than because of its breach of contract.

Our conclusion is that the evidence adduced upon trial under the pleadings entitle the trial court to find that Rose proved the existence of his cause of action against AQHA for breach of contract. We make our holding in accord. Thus the question for determination is limited, viz.: did part of the cause of action for such breach of contract arise in Tarrant County?

In the case of *Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770 (1945) the issue bore upon trespass rather than upon breach of contract. Speaking of the argument made by the plaintiff to the effect that the injection of drugs into her veins in the county of the defendant's residence set in motion an agency which the defendant knew would inflict injury many days in the future, including that inflicted in Hunt County while she was present therein, and hence constituted a trespass in Hunt County where plaintiff sought to maintain her suit, the court wrote: "In our opinion the argument confuses injury caused by the trespass with the trespass itself. The misfeasance or the wrongful act is the trespass."

Paraphrasing the above we believe it would be proper to say, relative to Mr. Rose's argument that the breach of contract by AQHA, originally occurring in Potter County, Texas, set in motion an agency which AQHA knew would inflict injury to him many days in the future, including that inflicted in Tarrant County during the first week of February, 1974 at the Fort Worth Fat Stock Show, whereat there was exclusion of him as a person permitted to do business, etc.: "In our opinion the argument confuses injury caused by the breach of contract by AQHA with the breach itself. It is the wrongful breach of contract upon which the cause of action is founded, and nothing constituting any part thereof was shown to have occurred in Tarrant County."

■ The provision of exception 23 of Article 1995 which permits a private corporation, association or joint stock company to be sued in any county in which the cause of action, or a part thereof arose means that either some part of the transaction creating the primary right, or some part of the transaction relating to the breach of that right, must have occurred in the county where suit was brought. *Stone Fort Nat. Bank of Nacogdoches v. Forbess,* 126 Tex. 568, 91 S.W.2d 674 (1936).

In *Stone Fort* the Supreme Court obviously disapproved the holding of the Court of Civil Appeals from which Writ of Error

**232**

was taken, to the effect that the plaintiff could bring suit against the bank which had wrongfully refused to honor his check in any county where he suffered damages, notwithstanding the fact that it took no part in any transaction in such county in producing any damages.

■ It appears that Matlock Rose's case is, by the pleadings, reduced to one dependent upon the theory that wherever there is an exhibition, show, rodeo, etc. held at which he is excluded as an exhibitor, judge, etc. he would be entitled to maintain his suit if brought in the county where the show was held by proving that he would have participated thereat and profited thereby but for his exclusion. This could not be correct. Most certainly it could not be the law as applied to a suit filed by Rose where his cause of action would be based upon and confined to complaint of the 1973 breach of contract by his suspension as a member of AQHA.

Of some analogy was our holding in the case of *Duncan Coffee Co. v. Clement,* 246 S.W.2d 509 (Fort Worth Tex.Civ.App., 1952, no writ history), where Justice Renfro wrote at page 512: "There is nothing to show that appellant participated in any transaction in either Johnson or Tarrant County, or contracted to perform any obligation in Johnson or Tarrant County. Therefore the appellee failed to meet the requirements of the exception relied upon, in that he failed to show that the cause of action, or any part thereof, arose in either of said counties, or that appellee resided in either county when the cause of action or a part thereof arose. (Citing cases.)"

The same thing applies here relative to Matlock Rose as appellee and AQHA as appellant in a test of the propriety of maintaining appellee's suit by Section 23 of Art. 1995 where premise for the suit is confined to alleged breach of contract.

Judgment of the trial court is reversed and here rendered sustaining the plea of privilege of AQHA and the cause is ordered transferred to the District Court of Potter County, Texas.