

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00017-CV

_____

MEDICAL RX SERVICES LLC; REMCO PHARMACY, INC.;
PHARMACEUTICAL DEVELOPMENT GROUP, LLC D/B/A RX-DIRECT
HOME DELIVERY; WESTLAKE HEALTH & BEAUTY PRODUCTS D/B/A
WESTLAKE HEALTH MART PHARMACY; AND TM PHARMACY SERVICES
LLC D/B/A PHARMTRUST PHARMACY, Appellants

V.

LANCE GEORGEKUTTY; VU VOUNG CAO; LGK BUSINESS VENTURES
LLC D/B/A PARKWAY PHARMACY; AND DEVOIR PHARMACY LLC D/B/A
MTM PHARMACY, Appellees

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-300355-18

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellants appeal from a summary judgment entered in favor of Appellees. Because the summary-judgment evidence did not raise genuine issues of material fact regarding essential elements of Appellants' claims, we affirm.

## I.  BACKGROUND

### A.  AN EMPLOYMENT RELATIONSHIP SOURS

Darren Tran created appellant Medical RX Services LLC (RX) to "maintain and manage" the administrative component of his four pharmacies: appellants Remco Pharmacy, Inc.; RX-Direct Home Delivery; Westlake Health Mart Pharmacy; and PharmTrust Pharmacy (collectively, RX Pharmacies).[1]  Appellee Vu Voung Cao was a pharmacist for two of the RX Pharmacies.

On September 11, 2017, appellee Lance Georgekutty began working for RX in investor relations.  Georgekutty signed a one-year[2] "General Employment Agreement" with RX that prohibited Georgekutty's disclosure of RX's trade secrets or his having any interest in "other business[es] similar to [RX's] business."  The

---

[1]We refer to all involved pharmacies by their d/b/a names.

[2]The term would have ended on September 11, 2018, and could have been terminated by either party with fourteen days' written notice; however, once the initial term expired, the agreement would have been considered "renewed . . . provided neither party submits a notice of termination" or unless RX "discontinue[d] operating."

agreement also provided that if suit were filed regarding the employment agreement, the prevailing party would be entitled to recover attorney's fees.

On January 12, 2018, Georgekutty filed a certificate of formation for appellee Parkway Pharmacy and listed its purpose as "retail pharmacy business." Also in January, Cao left RX Pharmacies because his job was "stressful."

On February 26, 2018, RX fired Georgekutty for three alleged work-rules violations: violating the HIPAA policy, violating the nondisclosure policy, and falsifying company information.[3] Four days earlier, Georgekutty had emailed an unidentified third party, asking about reporting pharmacy fraud.

In March 2018, Georgekutty opened Parkway and hired Cao as a "pharmacist in charge." In June 2018, Georgekutty bought appellee MTM Pharmacy, which was an operating pharmacy in Red Oak. In March 2019, Cao quit his job with Parkway, to "get away from the pharmacy business."

On June 15, 2018 (around the time Georgekutty had bought MTM), RX and RX Pharmacies filed suit against Georgekutty, Cao, and Parkway.[4] Against Georgekutty, RX raised claims for breach of the employment agreement and breach

---

[3]Tran later asserted in an affidavit that Georgekutty was fired on the day he had filed the certificate of formation for Parkway, implying this was the reason for the termination. However, Georgekutty filed the certificate on January 12, 2018, and he was fired on February 26, 2018. In a later paragraph of his affidavit, Tran recognized that the certificate had been filed on January 12, 2018.

[4]RX and RX Pharmacies named additional defendants, but they do not appeal the final judgment in favor of those parties.

3

of fiduciary duty. RX alleged that Cao and Parkway had induced, participated in, or aided and abetted[5] Georgekutty's breach of fiduciary duty. Against Georgekutty, Cao, and Parkway, RX and RX Pharmacies raised claims for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act (TUTSA), common law misappropriation of trade secrets,[6] conversion, tortious interference with business relationships, and conspiracy. Georgekutty filed a counterclaim against RX, seeking his attorney's fees as provided in the employment agreement.

In December 2018, RX Pharmacies closed "due to a lack of business sufficient to sustain operations."[7] Parkway closed in September 2019 because "[t]he rent was too high," and MTM closed in October 2019 because it "didn't have any more business."

---

[5]RX and RX Pharmacies later recognized that aiding and abetting is not a separate cause of action and that this claim was "subsumed" into their other claims. The trial court later dismissed this claim to the extent it was alleged "as a distinct cause of action."

[6]They later withdrew this claim, and the trial court dismissed it with prejudice.

[7]Around this same time, Tran and Giang Vu, Tran's business partner in RX and RX-Direct Home Delivery, became embroiled in a dispute over control of the entities, which resulted in Tran's calling the police to remove Vu from the premises and in Vu's suing Tran for malicious prosecution. *See Vu v. Tran*, No. 02-21-00059-CV, 2021 WL 3679245, *1–2 (Tex. App.—Fort Worth Aug. 19, 2021, no pet.) (mem. op.).

## B. LENGTHY FIGHT OVER JUDGMENT AS A MATTER OF LAW

To provide context for our ultimate holdings, we must recite the byzantine procedural history surrounding the final summary judgment. And as suggested by Georgekutty, Cao, Parkway, and MTM, this history is best set out in a timeline format.

| | |
|---|---|
| October 18, 2019— over one year after suit had been filed | Georgekutty, Cao, and Parkway file a no-evidence motion for summary judgment, which the trial court sets for written submission. |
| November 27, 2019 | RX and RX Pharmacies file an amended petition adding MTM as a defendant to their claims for misappropriation of trade secrets, conversion, tortious interference, and conspiracy. |
| January 2, 2020 | MTM files a no-evidence motion for summary judgment, joining the October 18 motion. |
| January 15, 2020 | Georgekutty, Cao, Parkway, and MTM file a traditional motion for summary judgment. |
| January 22, 2020 | RX and RX Pharmacies respond and specially except to the no-evidence motions for summary judgment. |
| January 29, 2020 | Georgekutty, Cao, Parkway, and MTM file an amended no-evidence motion for summary judgment, partially in response to RX and RX Pharmacies' special exceptions and expressly "withdraw" and "supersede" the October 18, 2019 and January 2, 2020 no-evidence motions. |
| January 31, 2020 | The trial court enters a scheduling order regarding the January 15, 2020 traditional motion and the January 29, 2020 amended no-evidence motion and sets them for written submission. |
| February 20, 2020 | RX and RX Pharmacies' deadline to respond to the traditional and amended no-evidence motions expires, but they do not respond. |
| February 25, 2020 | RX and RX Pharmacies file a verified motion for leave to file a late response to the traditional and amended no-evidence motions, noting that it would "likely add little more than new titles" to its prior January 22, 2020 response. RX and RX Pharmacies cite the factual and procedural complexity of the case, a family emergency, and a calendaring error to justify the extra time. |
| March 3, 2020 | RX and RX Pharmacies object to Georgekutty, Cao, Parkway, and MTM's summary-judgment evidence attached to the |

| | |
|---|---|
| | traditional summary-judgment motion.<br><br>Georgekutty, Cao, Parkway, and MTM object to the summary-judgment evidence attached to RX and RX Pharmacies' January 22, 2020 response in case the trial court considered that response to be applicable to the traditional and amended no-evidence motions. |
| March 4, 2020 | The trial court denies MTM's withdrawn January 2, 2020 no-evidence motion for summary judgment. |
| March 13, 2020 | Texas Governor Greg Abbott issues a COVID-19 disaster declaration. |
| April 16, 2020 | The trial court grants RX and RX Pharmacies' motion for leave to file a late summary-judgment response and sets an April 23, 2020 deadline. The trial court further resets the submission of the traditional and amended no-evidence motions for May 7, 2020. |
| April 23, 2020 | RX and RX Pharmacies respond to the traditional and amended no-evidence motions but include the same evidence and arguments that were included in their January 22, 2020 response. |
| April 30, 2020 | Georgekutty, Cao, Parkway, and MTM reply in support of their summary-judgment motions. |
| May 1, 2020 | Georgekutty, Cao, Parkway, and MTM move for leave to file one-day-late objections to RX and RX Pharmacies' summary-judgment response and evidence; the objections are substantially similar to their March 3, 2020 objections. The motion for leave is unopposed. |
| May 20, 2020 | The trial court grants the motion for leave to object and deems the objections to have been timely filed on May 1. The trial court sustains some, but not all, of Georgekutty, Cao, Parkway, and MTM's objections; sustains some, but not all, of RX and RX Pharmacies' objections; and grants the traditional and amended no-evidence motions for summary judgment. |
| June 23, 2020 | After substituting new counsel, RX and RX Pharmacies file a motion for leave to "amend and supplement" their summary-judgment evidence. They also ask the trial court to partially reconsider its summary-judgment orders. |
| June 25, 2020 | RX and RX Pharmacies file an amended motion for leave to amend and supplement their summary-judgment evidence and ask the trial court to reconsider the summary judgment. They |

| | partially rely on the fact that they filed their April 23, 2020 summary-judgment response "in the middle of the COVID-19 pandemic." The trial court sets the amended motion for written submission on July 22, 2020. |
|---|---|
| July 15, 2020 | Georgekutty, Cao, Parkway, and MTM respond to the amended motion for leave to amend and supplement. |
| July 17, 2020 | RX and RX Pharmacies file a reply in support of the amended motion for leave to amend and supplement. |
| August 6, 2020 | The trial court denies RX and RX Pharmacies' amended motion for leave to amend and supplement. |
| December 17, 2020 | After a bench trial on Georgekutty's counterclaim for attorney's fees—the sole remaining issue in the case—the trial court enters final judgment in favor of Georgekutty, Cao, Parkway, and MTM. |

Now on appeal, RX and RX Pharmacies (collectively, the RX Parties) assert that the trial court abused its discretion by refusing to allow them to amend or supplement their summary-judgment evidence, abused its discretion by sustaining some of the objections to their summary-judgment evidence, and erred by granting summary judgment in favor of Georgekutty, Cao, Parkway, and MTM (collectively, the Georgekutty Parties). The RX Parties challenge the summary judgments only as to their claims for breach of fiduciary duty (including Cao and Parkway's participation in Georgekutty's alleged breach of fiduciary duty), misappropriation of trade secrets under TUTSA, and Georgekutty's breach of the employment agreement. Thus, we

will not address their claims for conversion, tortious interference with business relationships, breach of a nondisclosure and noncompete agreement,[8] or conspiracy.

## II.  SUPPLEMENTAL SUMMARY-JUDGMENT EVIDENCE

In their fourth issue, the RX Parties argue that the trial court abused its discretion by denying their motion to amend or supplement their summary-judgment evidence after summary judgment had been granted.  In their motion, the RX Parties, through their newly retained attorney, relied on "the circumstances and limitations" presented to justify the need for supplementation: (1) "the COVID-19 pandemic and associated governmental orders" at the time the summary judgments were granted justified "additional latitude"; (2) the fact that the trial court had previously denied MTM's withdrawn no-evidence motion; and (3) Rule 166a(f), which allows affidavits to be supplemented.  *See* Tex. R. Civ. P. 166a(f).

It seems that the RX Parties' argument is that after the trial court granted summary judgment, they should have been allowed to fix the defects in their summary-judgment evidence pointed out by the Georgekutty Parties in their earlier objections.  But the RX Parties did not respond to the Georgekutty Parties' March 3 or May 1 objections, even though they had been unopposed to the Georgekutty Parties' motion to file the May 1 objections late and even though the May 1 objections

---

[8]The RX Parties alleged that Georgekutty had not only breached the employment agreement but had also breached a separate nondisclosure and noncompete agreement.  However, the RX Parties do not argue on appeal that the summary judgment on their breach-of-contract claim based on an NDA was in error.

were substantively the same as the March 3 objections. And the RX Parties did not seek a continuance to respond to the objections or to raise the good-cause arguments they now urge on appeal. Instead, the RX Parties sought to supplement their summary-judgment evidence after summary judgment had been granted.

Contrary to the RX Parties' argument based on Rule 166a(f), which permits (but does not require) supplementation, Rule 166a(c) forecloses post-summary-judgment supplementation: "The judgment sought shall be rendered forthwith if [the summary-judgment evidence] on file at the time of the hearing, or filed thereafter *and before judgment* with permission of the court" reveals no genuine issue of material fact. Tex. R. Civ. P. 166a(c) (emphasis added). We conclude that neither the surrounding facts nor the COVID-19 pandemic justified post-judgment supplementation in light of the clear prohibition in Rule 166a(c) and based on the RX Parties' failure to specify how the pandemic affected their ability to effectively respond to the Georgekutty Parties' objections before summary judgment was granted. *Cf. Ortiz v. Rodriguez*, No. 02-20-00388-CV, 2021 WL 4472623, at *4 (Tex. App.—Fort Worth Sept. 30, 2021, pet. filed) (mem. op.) (affirming trial court's denial of motion to reinstate case partly based on plaintiff's failure to specifically explain how pandemic had affected his ability to timely serve the parties or seek alternate service); *Brumfield v. Williamson*, No. 01-19-00336-CV, 2021 WL 2149335, at *29 (Tex. App.—Houston [1st Dist.] May 27, 2021, pet. filed) ("A trial court cannot grant a motion to amend the pleadings once it renders summary judgment."); *Ventura v. Vasquez*, No. 01-19-00240-CV, 2019 WL

9

6904545, at *4 n.1 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, no pet.) (mem. op.) (recognizing supplemental affidavit filed after summary judgment granted could not be considered on appeal because it was not on file at the time judgment granted); *Beavers v. Goose Creek Consol. ISD*, 884 S.W.2d 932, 935 (Tex. App.—Waco 1994, writ denied) (finding trial court may accept evidence "after the hearing on the motion and before summary judgment is rendered"). The RX Parties' summary-judgment response to the Georgekutty Parties' traditional and amended no-evidence motions relied on the same evidence and arguments included in the RX Parties' predisaster-declaration response to the Georgekutty Parties' original no-evidence motions. The Georgekutty Parties' March 3 objections were filed before the disaster declaration as well. And we do not agree that the trial court's denial of a summary-judgment motion that had been not only expressly withdrawn but also amended could have caused confusion about the status of the amended motion.

The RX Parties assert that they are not asking for a "do over" but merely for "additional latitude" based on the circumstances. But the RX Parties were asking for more than additional time or "latitude"; they were seeking a second bite at the summary-judgment apple, which the rules do not permit notwithstanding COVID-19 and a complicated procedural history. Accordingly, the trial court did not abuse its discretion by denying the RX Parties' motion to amend or supplement their summary-judgment evidence, and we overrule issue four.

10

## III. PROPRIETY OF SUMMARY JUDGMENT

Again, the RX Parties challenge the summary judgments only regarding their claims for breach of fiduciary duty (including Cao and Parkway's participation in Georgekutty's alleged breach), misappropriation of trade secrets under TUTSA, and Georgekutty's breach of the employment agreement. The Georgekutty Parties argue on appeal that they were entitled to summary judgment because there was no or only a scintilla of evidence raising genuine issues of material fact on essential elements of each of these claims.

### A. STANDARDS AND SCOPE OF REVIEW

Although the Georgekutty Parties moved for both a traditional and a no-evidence summary judgment, we will review the ruling on the no-evidence motion first. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

We review a no-evidence summary judgment de novo. *See id.* In our review, we examine the entire record in the light most favorable to the RX Parties, indulging every reasonable inference and resolving any doubts in their favor. *See id.*; *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). However, we do not consider evidence that the trial court struck and did not consider because such evidence is not a part of the summary-judgment record. *See Sauls v. Munir Bata, LLC*, Nos. 02-14-00208-CV, 02-14-00214-CV, 2015 WL 3905671, at *5 (Tex. App.—Fort Worth June 11, 2015, no pet.) (mem. op.); *U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 215 (Tex. App.—San

11

Antonio 2012, pets. denied) (op. on reh'g). We do consider all grounds presented to the trial court and preserved on appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

The Georgekutty Parties, as the parties without the burden of proof, were entitled to move for summary judgment on the ground that no evidence supported a specified, essential element of each of the RX Parties' claims. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *First United*, 514 S.W.3d at 219; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Unless the RX Parties produced more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on each challenged element, the court was required to grant the motion. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

## B. BREACH OF FIDUCIARY DUTY AND PARTICIPATION IN THE BREACH

RX alleged that Georgekutty breached his fiduciary duties to RX as his employer. According to RX, Parkway and Cao had induced or participated in Georgekutty's breaching his fiduciary duty to RX and, thus, were joint tortfeasors. Regarding damages, RX alleged that Georgekutty's breach injured the RX Parties or resulted in benefit to Georgekutty and that Parkway and Cao were jointly and severally liable for these damages as joint tortfeasors. The RX Parties then specified that they were seeking actual and exemplary damages as a result of the Georgekutty

Parties' fiduciary-duty breaches.[9]  In their general prayer for relief, the RX Parties pleaded for actual damages; punitive damages; attorney's fees, court costs, and interest; and "such additional relief, at law or in equity, to which they may be justly entitled."

## 1. Equitable Remedies

In their no-evidence motion, the Georgekutty Parties asserted that RX had no evidence of damages attributable to any alleged breach of fiduciary duty.  The RX Parties asserted in response that there was sufficient summary-judgment evidence that they had "suffered damages as a result [of the breach of duty], or that [Georgekutty, Cao, and Parkway] should be required to disgorge the illegal profits."  *See In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (orig. proceeding) (recognizing disgorgement is not a measure of actual damages but is an "equitable forfeiture of benefits wrongfully obtained"); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513–14 (Tex. 1942), and recognizing disgorgement as a potential remedy for breach of fiduciary duty that does not require proof of actual damages).

On appeal, the RX Parties take it one step further and contend that their general prayer for relief precluded summary judgment because the prayer

_____

[9]Although only RX raised the breach-of-fiduciary claim against Georgekutty (and alleged that Cao and Parkway participated), the RX Parties continually referred to the damages as being suffered by RX *and* RX Pharmacies.

encompassed all available equitable remedies for a breach of fiduciary duty, which were not specifically addressed in the Georgekutty Parties' no-evidence motion. The Georgekutty Parties respond that because claims for equitable relief must be specifically pleaded, equitable remedies were not at issue and therefore cannot preclude summary judgment. Our review of the trial court's summary judgment is limited to the equitable remedy of disgorgement because the RX Parties similarly limited their summary-judgment response to this equitable remedy. *See Cincinnati Life*, 927 S.W.2d at 624, 626; Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 60 S. Tex. L. Rev. 1, 130 (2019).

Texas follows the fair-notice standard of pleading, which "looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see* Tex. R. Civ. P. 45(b), 47(a); *Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979). In short, pleadings must give the parties fair notice of the claims, defenses, and relief sought. *See Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). To sufficiently allege disgorgement tied to the fiduciary-duty claims raised against Georgekutty, Cao, and, Parkway, the RX Parties rely on their general prayer for relief ("additional relief, at law or in equity, to which they may be justly entitled"), their general statement of the relief sought ("[the RX Parties] seek monetary relief in an amount over $1 million as well as non-monetary,

14

injunctive relief"), and RX's allegation that Georgekutty's fiduciary-duty breach caused "benefit to Georgekutty." *See* Tex. R. Civ. P. 47(a), (c)–(d).

These generalized allegations did not provide fair notice that the RX Parties were seeking disgorgement, especially given that they specifically pleaded for only actual and exemplary damages in their statement of their fiduciary-duty claims. *See Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 837, 839 (Tex. 1967); *Jones v. Coppinger*, No. 08-20-00040-CV, 2021 WL 3878878, at *8 (Tex. App.—El Paso Aug. 31, 2021, no pet.); *Am. Quarter Horse Ass'n v. Rose*, 525 S.W.2d 227, 231 (Tex. App.—Fort Worth 1975, no writ); *see also Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) ("When a pleader provides both general and specific allegations, the specific controls, and the pleader cannot rely on the general allegations to expand the scope of the claim."); *Kissman*, 587 S.W.2d at 677 ("Only the relief consistent with the theory of the claim reflected in the petition may be granted under a general prayer."). "Construing a general prayer for relief as subsuming *any* equitable or legal doctrine simply by including those terms in the prayer, would not serve the purpose of our pleading rules." *Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also Tex. Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 803 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (concluding that general prayer for "such other relief . . . to which plaintiff may be entitled" did not give fair notice that plaintiff was seeking mental-anguish damages). We cannot reverse the trial court's

15

summary judgment based on an unidentified fact issue on an equitable remedy—disgorgement—that the RX Parties did not fairly raise in their pleadings.

The RX Parties argue that because they complied with Rule 47(c) and (d), they necessarily met the fair-notice requirements and, thereby, sufficiently pleaded for the equitable relief of disgorgement. *See* Tex. R. Civ. P. 47(c)–(d). But a party's pleadings must "provide fair notice of the claim *and the relief sought* such that the opposing party can prepare a defense." *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (emphasis added). A plaintiff's allegations that he seeks recovery of all legal and equitable remedies within the trial court's jurisdiction, even though compliant with Rule 47(c) and (d), do not put every unspecified, applicable equitable remedy at issue. *See Am. Quarter Horse*, 525 S.W.2d at 231. To so hold would carve out requested remedies from the fair-notice requirement, ignoring Rules 45(b) and 47(a).

The RX Parties' allegations as a whole did not give fair notice that they were seeking disgorgement as well as actual and exemplary damages, for which they did specifically plead. *See* Tex. R. Civ. P. 45(b); *Jones*, 2021 WL 3878878, at *8. "A plaintiff sufficiently pleads a cause of action when the elements of the claim and the relief sought may be discerned from the pleadings alone." *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). Even under a liberal construction, the RX Parties did not plead for the equitable relief of disgorgement. *See Boyles v. Kerr*, 855 S.W.2d 593, 600–01 (Tex. 1993) (op. on reh'g); *cf. Gammon v. Hodes*, No. 03-13-00124-CV, 2015

16

WL 1882274, at *3 (Tex. App.—Austin Apr. 24, 2015, pet. denied) (mem. op.) (concluding plaintiffs had sufficiently pleaded for equitable remedy of fee forfeiture by alleging defendant had breached fiduciary duty and "should be forced to disgorge all attorney's fees paid" by plaintiffs). Accordingly, this unpleaded remedy cannot be a ground upon which to reverse the trial court's summary judgment regarding the fiduciary-duty claims. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (holding summary-judgment defendants "are not required to guess what unpleaded claims might apply and negate them"); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995) (explaining that summary-judgment defendant is only required to "meet the plaintiff's case as pleaded"); *cf. City of Fort Worth v. Rust*, No. 02-20-00130-CV, 2020 WL 6165297, at *4 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op.) (declining to review plea-to-the-jurisdiction evidence to determine if plaintiff raised a fact issue on unpleaded claim).

### 2. Actual damages

The RX Parties also argued in their summary-judgment response that they had raised a fact issue on their actual damages attributable to the fiduciary-duty torts. But on appeal, they do not argue that they proffered more than a scintilla of summary-judgment evidence raising a fact issue on actual damages, solely focusing instead on their unpleaded equitable remedies.[10] Thus, we will not attempt to find one for them.

---

[10]This is not a situation where the RX Parties' appellate arguments are so entwined or overlapped that we can discern they are also presenting evidentiary fact

17

*See* Hittner & Liberato, *supra* at 129–30 ("[T]he appellant must attack each basis on which the summary judgment could have been granted. If it does not make a specific challenge to a ground, whether proper or improper, the summary judgment concerning that ground will be affirmed."). Even had the RX Parties properly raised this issue for our review, we would conclude that the RX Parties' evidence, specifically Tran's affidavit, was only a scintilla that did not raise a genuine issue of material fact regarding the existence of the RX Parties' actual damages based on an alleged breach of fiduciary duty. *See, e.g., In re Est. of Boyle*, No. 11-13-00151-CV, 2014 WL 7332761, at *8 (Tex. App.—Eastland Dec. 18, 2014, no pet.) (mem. op.); *Martin v. Ests. of Russell Creek Homeowners Ass'n, Inc.*, 251 S.W.3d 899, 903–04 (Tex. App.—Dallas 2008, no pet.); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366–67 (Tex. App.—Dallas 2005, no pet.).

## C. Misappropriation of Trade Secrets Under TUTSA

To establish the misappropriation of a trade secret under TUTSA, the RX Parties were required to show (1) they owned a trade secret, (2) the Georgekutty Parties misappropriated the trade secret, and (3) injury caused by the misappropriation. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.002(1), (3), (6), 134A.004(a); *see also Morgan v. Clements Fluids S. Tex., LTD.*, 589 S.W.3d 177, 186, 191

issues as to actual damages and, thus, should request additional briefing. *See, e.g., St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214–15 (Tex. 2020). The RX Parties intentionally and exclusively brief only equitable remedies in addressing the damage element of their fiduciary-duty claims. We defer to their strategic choice.

(Tex. App.—Tyler 2018, no pet.); *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *13 (Tex. App.—Austin Feb. 17, 2017, pet. denied) (mem. op. on reh'g); *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).

The RX Parties alleged that the Georgekutty Parties misappropriated the RX Parties' trade secrets—"products, pricing, marketing, sales techniques, customer information, customer histories, customer consumption, customer needs, and customer lists, patient information, patient lists, price lists, client lists, distributor lists, referring physician lists, vendor lists, supplier lists, employee lists, formulations, proprietary claim-submission forms, and templates for script pads"—by improperly using or disclosing this information to Parkway, MTM, and a third pharmacy allegedly owned by Georgekutty.[11] Although pleadings are not summary-judgment evidence, *see Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971), the RX Parties were required to give fair notice of the nature of their TUTSA claim and the relief sought, *see* Tex. R. Civ. P. 45(b), 47(a). Therefore, the RX Parties' pleading of their claim provides part of the framework for our review. *See* Tex. R. Civ. P. 166a(c) (providing trial court's summary judgment must be based in part on the pleadings on file at the time of the hearing); *see also Cook v. Brundidge, Fountain, Elliott & Churchill*,

---

[11]The RX Parties named this pharmacy as a defendant but later nonsuited those claims.

19

533 S.W.2d 751, 759 (Tex. 1976) (holding defendant only "required to meet the plaintiff's case as pleaded" when moving for summary judgment).

In their amended no-evidence motion, the Georgekutty Parties argued that the RX Parties had no evidence that the Georgekutty Parties had misappropriated—used or disclosed—a trade secret, which is an essential element of the RX Parties' TUTSA claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3).

In response, the RX Parties argued they had raised a fact issue that the Georgekutty Parties had misappropriated nine of the alleged trade secrets— "products, pricing, marketing, sales techniques, customer information, customer histories, customer consumption, customer needs, and customer lists"—via one of six "paths" provided in TUTSA. *See id.* § 134A.002(3)(A), (B)(i), (B)(ii)(a), (B)(ii)(b), (B)(ii)(c), (B)(iii). The RX Parties recounted each path in hypothetical terms untethered to any specific facts[12] and then concluded that "[t]here is sufficient summary judgment evidence of the existence of and the misappropriation of trade secrets by [the Georgekutty Parties]." The RX Parties summarized their argument: The Georgekutty Parties took RX Pharmacies' "playbook" of trade secrets and "from day one, it appears to have been, as the saying goes, 'raining money' at [the

---

[12]One example: "Under path two, any person who discloses or uses another's trade secret and who acquired that trade secret through improper means could be liable for misappropriation. For example, an employee who steals a password to obtain access to his employer's trade secret could be liable for misappropriation if that employee discloses or uses that trade secret."

20

Georgekutty Parties'] new pharmacy, and all the [Georgekutty Parties] 'got wet.'" The RX Parties argued that this lucrative storm would have been "a nearly impossible accomplishment" unless the Georgekutty Parties "got a jump-start, by copying [the RX Parties'] 'playbook' business trade secrets, trading on the knowledge of [the RX Parties'] financial arrangements, the knowledge of [the RX Parties'] former employees."

The RX Parties cited to no summary-judgment evidence to support these assertions; however, in the portion of their combined response entitled "FACT ISSUES PRESENTED BY THE EVIDENCE," they had pointed to (1) paragraphs 5, 6, 14, 18, 20, 21, 24, 26, 27, and 28 of Tran's affidavit; (2) Georgekutty's deposition testimony that he had formed Parkway as a retail-pharmacy business while employed at RX and that he had bought MTM after leaving RX; and (3) Parkway's corporate-formation documents in support of their contention that fact issues existed on the Georgekutty Parties' TUTSA violations. On appeal, the RX Parties assert that this evidence directly and circumstantially supported the Georgekutty Parties' "use" of trade-secret information.

The trial court struck paragraphs 14, 20, 21, 24, 26, and 27 of Tran's affidavit, and the RX Parties do not complain of these rulings on appeal. Accordingly, we may not consider these paragraphs in our review of the trial court's summary judgment. *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.).

21

In paragraphs 5 and 6, Tran stated that the RX Parties owned unspecified confidential and proprietary information, which was not publicly disclosed, gave the RX Parties a business advantage, and was diligently kept secret. In paragraph 18, Tran averred that the Georgekutty Parties had conspired "to misappropriate and use [the RX Parties'] trade secrets and confidential information" as shown by Georgekutty's forming Parkway to operate a retail pharmacy business. In paragraph 28, Tran stated that the RX Parties were harmed by the Georgekutty Parties' "intentional and malicious acts" and that the RX Parties' "damages continued" until the RX Pharmacies all closed in December 2018.

These affidavit statements, Georgekutty's testimony that he had formed Parkway to be a retail pharmacy and that he had bought MTM, and Parkway's formation documents are no more than a scintilla of evidence, failing to raise a genuine issue of material fact, that the Georgekutty Parties used or disclosed "products, pricing, marketing, sales techniques, customer information, customer histories, customer consumption, customer needs, and customer lists." *See generally Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 528 (Tex. App.—San Antonio 2020, pets. pending) (op. on reh'g) ("If a TUTSA claimant demonstrates that the information it seeks to protect meets the statutory definition of 'trade secret,' it must then show that the defendant misappropriated the trade secret."). It was undisputed that Georgekutty formed Parkway as a retail pharmacy, that he filed the certificate of formation whilst employed by RX, and that he later bought MTM. But this evidence

22

is, at best, only a scintilla that the Georgekutty Parties disclosed or used the RX Parties' trade secrets and confidential information in doing so. *See, e.g.*, *Lakeway Reg'l*, 2017 WL 672451, at *14 ("Lake Travis's summary judgment responses, simply speculating that cross-appellees must have used Lake Travis's confidential information, did no more than create a 'mere surmise or suspicion' of use or disclosure of Lake Travis's trade secrets."); *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App.—Dallas 2015, no pet.) (holding plaintiff failed to raise a fact issue on misappropriation based on its assertion that defendant "must have used" plaintiff's information because defendant "could have developed its own customer list in any number of ways").

The RX Parties argue that we must consider all of the evidence that the trial court stated it considered in its summary-judgment order—all the evidence that the trial court had not struck—and, thereby, look beyond the evidence cited to the trial court in their combined summary-judgment response. But neither the trial court nor this court is required to search the filed summary-judgment evidence, which in this case spans almost 450 pages, to independently ferret out fact issues. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Trebesch v. Morris*, 118 S.W.3d 822, 825 (Tex. App.—Fort Worth 2003, pet. denied); *HK Partners, Inc. v. Power Computing Corp.*, No. 03-98-00124-CV, 1999 WL 332573, at *2–3 (Tex. App.—Austin May 27, 1999, no pet.) (not designated for publication); *McCord v. Mem'l Med. Ctr. Hosp.*, 750 S.W.2d 362, 364 (Tex. App.—

23

Corpus Christi–Edinburg 1988, no writ); *Holmes v. Dall. Int'l Bank*, 718 S.W.2d 59, 60 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). *See generally Payne v. Highland Homes, Ltd.*, No. 02-14-00067-CV, 2016 WL 3569533, at *4–5 (Tex. App.—Fort Worth June 30, 2016, no pet.) (mem. op.) (collecting cases).

We conclude that the summary-judgment evidence relied on by the RX Parties presents no genuine issue of material fact that the Georgekutty Parties used or disclosed the RX Parties' confidential or trade-secret information under any of the six suggested "paths" to misappropriation. *See, e.g., Global Supply Chain Sols., LLC v. Riverwood Sols., Inc.*, No. 05-18-00188-CV, 2019 WL 3852661, at *15–16 (Tex. App.—Dallas Aug. 16, 2019, no pet.) (mem. op.); *Cent. States Logistics, Inc. v. BOC Trucking, LLC*, 573 S.W.3d 269, 280–81 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Green Garden Packaging Co. v. Schoenmann Produce Co.*, No. 01-09-00924-CV, 2010 WL 4395448, at *9 (Tex. App.—Houston [1st Dist.] Nov. 4, 2010, no pet.) (mem. op.); *see also Game Sys., Inc. v. Forbes Hutton Leasing, Inc.*, No. 02-09-00051-CV, 2011 WL 2119672, at *22–23 (Tex. App.—Fort Worth May 26, 2011, no pet.) (mem. op.); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 464–68 (Tex. App.—Austin 2004, pets. denied).

### D. BREACH OF EMPLOYMENT AGREEMENT

RX alleged that Georgekutty breached the employment agreement by failing to give his best efforts solely to the RX Parties' business and interest, by being interested in a business similar to the RX Parties' business, and by disclosing or using the RX

Parties' trade secrets during and after his employment.[13] To maintain its breach-of-contract claim, the RX Parties had to show (1) the existence of a valid contract; (2) RX performed or tendered performance as the contract required; (3) Georgekutty breached the contract by failing to perform or tender performance as the contract required; and (4) RX sustained damages as a result of the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (op. on reh'g).

The Georgekutty Parties asserted in their no-evidence motion that RX had no evidence that Georgekutty had breached the contract or "of any injury caused by a breach of any agreement, including any injury caused by a breach of the Employment Agreement." The RX Parties responded that Georgekutty's breaches of the agreement "proximately caused injury to [RX] and the [RX Pharmacies] who were the principals of [RX]" and that they "suffered actual, consequential, and incidental damages that have resulted from . . . Georgekutty's breach of the Employment Agreement."

### 1. Causation

A breach of contract must be a substantial factor in bringing about the alleged injury—that the defendant's conduct was a cause in fact of the injury, which would not have occurred otherwise. *See Borg–Warner Corp. v. Flores*, 232 S.W.3d 765, 770

---

[13]Although the employment agreement was between only Georgekutty and RX, the RX Parties alleged that the asserted breaches extended to the RX Parties' business and trade-secret interests.

(Tex. 2007); *City of Austin v. Hous. Lighting & Power Co.*, 844 S.W.2d 773, 795 (Tex. App.—Dallas 1992, writ denied). A substantial factor requires more than a possibility of causation; it requires responsibility. *Borg–Warner*, 232 S.W.3d at 770. Thus, cause in fact cannot be established by "mere conjecture, guess, or speculation." *Van Der Linden v. Khan*, 535 S.W.3d 179, 194 (Tex. App.—Fort Worth 2017, pet. denied) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)).

As we discussed regarding the RX Parties' TUTSA claim, the RX Parties cited to no summary-judgment evidence to support their assertion that the evidence raised a fact issue on causation. But in the factual portion of their response, the RX Parties argued that their "loss of business and goodwill" was a "proximate result" of the Georgekutty Parties' acts. They also generally argued that the "wrongful acts, complained of, cost [the RX Parties] revenue," leading to the closure of RX Pharmacies. The RX Parties contended that Georgekutty's neglect of several insurance audits, which was one of his duties for RX, "jeopardized" Remco's benefit-manager contracts and that his opening Parkway resulted in a "migration of [the RX Parties'] business to [the Georgekutty Parties'] newly opened pharmacy." In support of these arguments, the RX Parties relied on paragraphs 14, 16, 26, and 28 of Tran's affidavit.

As noted before, the trial court sustained the Georgekutty Parties' objections to paragraph 26, the RX Parties do not complain of that ruling on appeal, and we will not consider that paragraph in our review because the trial court expressly did not do

26

so. Paragraph 28 is nothing more than a repetition of the RX Parties' causation assertion in their response: "The harm to [the RX Parties] described in [their] Amended Petition is a result of the intentional and malicious acts of [the Georgekutty Parties]." In paragraph 16, Tran again stated that Georgekutty's handling of the audits "jeopardized" Remco's benefit-manager contracts, but he points to no further evidence supporting this causation assertion. Tran's affidavit statements are no evidence of the requisite causation. *See, e.g.*, *Sheffield Dev. Co. v. Carter & Burgess, Inc.*, No. 02-11-00204-CV, 2012 WL 6632500, at \*10–11, \*13 (Tex. App.—Fort Worth Dec. 21, 2012, pet. dism'd by agr.) (mem. op.); *cf. Burbage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014) (holding a "jury cannot reasonably infer that defamation caused the [business] cancellations when the cancellations could have occurred for any number of reasons," especially because plaintiff never asked customers why they had cancelled their business with plaintiff); *Van Der Linden*, 535 S.W.3d at 195 (holding temporal proximity between breach and alleged wrongful action insufficient to constitute clear and specific evidence of proximate cause).

## 2. Injury[14]

Damages are compensation for a loss or injury. *See Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992). The Georgekutty Parties asserted that there was no evidence "of any injury caused by a breach of any agreement." Although we do not

---

[14]Even though we have determined there was no evidence of causation, we address this summary-judgment argument in an abundance of caution.

27

necessarily equate this argument to be a challenge to the evidentiary support for the RX Parties' damages tied to a breach of the employment agreement, the parties' summary-judgment briefing showed that the RX Parties understood that the Georgekutty Parties were attacking the evidentiary support for its breach-of-contract damages as well as for causation. *See Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 705 (Tex. 2021) (concluding summary-judgment argument sufficiently presented in the trial court and, thereby, preserved for appeal partially because "the record indicates that the Association was under no misimpression as to the substance of Li's argument"). Indeed, the case the Georgekutty Parties cited in their motion holds that a breach requires evidence that the plaintiff "was damaged as a result of [the defendant's] breach." *Las Colinas Obstetrics–Gynecology–Infertility Ass'n v. Villalba*, 324 S.W.3d 634, 645 (Tex. App.—Dallas 2010, no pet.). And on appeal, the RX Parties recognize that the Georgekutty Parties' evidentiary challenge to an "injury" was a challenge to the evidence of damages. Based on these facts, we conclude that because the substance of the damages argument was before the trial court, we may consider it as properly before us on appeal. *See Li*, 631 S.W.3d at 704; *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 791 (Tex. 2019).

In responding to the damages argument, the RX Parties averred that the evidence showed RX (and RX Pharmacies as "principals of Medical RX") had "suffered" the pleaded damages. They also asserted that because RX had alleged a breach of the separate noncompetition agreement between RX and Georgekutty, a

28

rebuttable presumption of irreparable injury arose. In reply, the Georgekutty Parties pointed out that the referenced presumption was relevant only to an injunctive-relief request, not to a claim for breach. And they argued that Tran's affidavit, "the only purported evidence of damages," did not raise a fact issue on actual damages, merely raising a suspicion of a fact.

The RX Parties argue on appeal that Tran's affidavit raised a material fact issue on RX's breach-of-contract damages because Tran addressed (1) lost business income arising from Geogekutty's "spreading false and negative information about [the RX Parties] and their businesses while an employee of Medical RX" and (2) lost income and expenses as a result of Georgekutty's handling of the audits.

Regarding Tran's loss-of-business-income assertion, the trial court struck this portion of his affidavit, and the RX Parties do not complain of this ruling on appeal.[15] Thus, we may not consider this paragraph in our review. *See Sauls*, 2015 WL 3905671, at *5. Accordingly, there was no evidence before the trial court regarding any loss of business income.

Regarding damages tied to Georgekutty's actions surrounding the insurance audits, Tran averred Georgekutty "caused [the RX Parties'] actual damages in the form of lost revenue and the expense of correctly handling the audits. Many of the

---

[15]Tran asserted in the struck portion of his affidavit that Georgekutty and Cao made several false and disparaging statements about RX and RX Pharmacies, which "caused damages in the loss of business income."

negative findings of the audits were reversed, but not all, thus costing [the RX Parties] money." Although lost profits do not have to be subject to exact calculation, their existence must be shown by competent evidence with reasonable certainty and must be based on objective facts, figures, or data from which the amount may be ascertained. *See Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 861–65 (Tex. 2017); *Szczepanik v. First S. Tr. Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). Tran's affidavit is a bare conclusion and does not raise a fact issue on the existence of the RX Parties' damages or loss. *See, e.g.*, *Horizon Health*, 520 S.W.3d at 861–62; *Amer-Consol. Roofing, Inc. v. Key City Veterinary Clinic, Inc.*, No. 11-17-00255-CV, 2019 WL 4135470, at *3 (Tex. App.— Eastland Aug. 30, 2019, no pet.) (mem. op.); *Davidson v. Tel W. Network Servs. Corp.*, No. 14-13-00089-CV, 2014 WL 1713899, at *4 (Tex. App.—Houston [14th Dist.] Apr. 29, 2014, no pet.) (mem. op.); *cf. El Dorado Motors*, 168 S.W.3d at 366–67 (holding deposition testimony as to lost profits was not competent summary-judgment evidence because the deponent did not provide the basis for his calculations).

The RX Parties also attempt to rely on Tran's amended and supplemental affidavit, in which he gave more concrete detail as to damages but we have already concluded that the trial court did not abuse its discretion by denying the RX Parties' motion to supplement filed after summary judgment had been granted. Because the trial court did not consider this affidavit, we cannot. *See* Tex. R. Civ. P. 166a(c); *U.S. Fire Ins.*, 399 S.W.3d at 215.

The RX Parties assert for the first time on appeal that RX's injury was stipulated to in the employment agreement:

> It is further agreed that any breach or evasion of any of the terms of this Agreement by either party will result in immediate and irreparable injury to the other party and will authorize recourse to injunction and or specific performance as well as to all other legal or equitable remedies to which such injured party may be entitled under this Agreement.

This provision, the RX Parties assert, contractually estops Georgekutty from denying RX's injury. But the RX Parties did not in any way raise this contractual-damages argument in the trial court, and we cannot rely on it to reverse the trial court's summary judgment.[16] *See Johnson*, 73 S.W.3d at 204; Hittner & Liberato, *supra* at 130.

The RX Parties finally contend that the remedy of injunctive relief is still available for Georgekutty's asserted breaches of the employment agreement because the Georgekutty Parties did not seek summary judgment on the RX Parties' application for injunctive relief. But injunctive relief is dependent upon the viability of an underlying cause of action. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011). Here, we have concluded that the RX Parties did not proffer more than a scintilla of evidence supporting every element of their TUTSA, fiduciary-duty, and breach-of-contract claims. Thus, the no-evidence summary judgment was proper,

---

[16]As we previously recognized, the RX Parties asserted in the trial court that the breach of a noncompete agreement creates a rebuttable presumption of irreparable injury. But this argument was not based on the contractual provision in the employment agreement, did not rely on contractual estoppel, and seemingly applied only to their request for injunctive relief.

and the RX Parties' claim for the remedy of injunctive relief necessarily fails as well. *See Digilio v. True Blue Animal Rescue*, No. 01-18-01087-CV, 2021 WL 1031976, at \*13 (Tex. App.—Houston [1st Dist.] Mar. 18, 2021, no pet.) (mem. op. on reh'g); *Frey v. DeCordova Bend Ests. Owners Ass'n*, 632 S.W.2d 877, 881 (Tex. App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex. 1983).

## IV. CONCLUSION

The trial court did not abuse its discretion by refusing to allow the RX Parties to supplement their summary-judgment evidence after summary judgment had been rendered against them. We overrule issue four. The RX Parties produced no more than a scintilla of evidence raising a genuine issue of material fact on each element of their claims for breach of fiduciary duty (including Cao and Parkway's participation in Georgekutty's alleged breach of fiduciary duty), misappropriation of trade secrets under TUTSA, and breach of the employment agreement. Thus, the trial court properly granted the Georgekutty Parties' no-evidence motion for summary judgment. We overrule issue one. We need not address issue two, which challenges the trial court's traditional summary judgment. *See First United*, 514 S.W.3d at 219. And we need not address the RX Parties' issue directed at four of the trial court's evidentiary rulings—issue three—because (1) the RX Parties did not rely on the challenged evidence in responding to the damages element of their breach-of-fiduciary-duty claim, the damages element of their breach-of-contract claim, or the misappropriation element of their TUTSA claim; and (2) even after considering a

32

struck paragraph of Tran's affidavit (paragraph 16) cited in support of the causation element of RX's breach-of-contract claim, the summary judgment was not in error. *See Skrastina v. Breckinridge-Taylor Design, LLC*, No. 05-17-00796-CV, 2018 WL 3078689, at *10 (Tex. App.—Dallas June 20, 2018, no pet.) (mem. op.); *Reynolds v. Murphy*, 188 S.W.3d 252, 259 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.").

We recognize that we have decided some of the RX Parties' arguments on the basis of summary-judgment procedure, rather than on the merits, and that the Texas Supreme Court has instructed that procedural defects should not cause the right to appeal to be unnecessarily lost, allowing parties to construct new arguments in support of summary-judgment issues raised below. *See Li*, 631 S.W.3d at 704–05; *see also Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732–33 (Tex. 2020); *Horton v. Stovall*, 591 S.W.3d 567, 569–70 (Tex. 2019); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). However, we cannot entertain summary-judgment issues that were not substantively argued in the trial court or that are not substantively raised again on appeal. Such defects are not readily correctable and would disregard the limits to our summary-judgment review—only issues substantively argued in the trial court and preserved on appeal. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015); *Cincinnati Life*, 927 S.W.2d at 627.

Accordingly, we affirm the trial court's summary judgment.  *See* Tex. R. App. P. 43.2(a).


/s/ Brian Walker

Brian Walker
Justice

Delivered:  December 23, 2021