# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00770-CV

**Palliative Plus LLC d/b/a Paloma Hospice and Palliative Care; Sathyajith "Saji" Nair; and Kellie Gibson, Appellants**

**v.**

**A Assure Hospice, Inc. d/b/a Divinity Hospice; Jason Campbell; Jay Campbell; Mitch Epps; Justin Hunter, LVN; Mike Pena; Alexander "Alex" Stevens RN; and Melissa Stevens, Appellees**

## FROM THE 480TH DISTRICT COURT OF WILLIAMSON COUNTY
## NO. 22-0270-C368, THE HONORABLE SCOTT K. FIELD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Four employees left one Williamson County hospice provider—Palliative Plus LLC d/b/a Paloma Hospice and Palliative Care (Paloma)—to work for another—A Assure Hospice, Inc. d/b/a Divinity Hospice (Divinity). After additional Paloma employees and several Paloma patients followed the departing staff to Divinity, Paloma and its owners, Sathyajith Nair and Kellie Gibson (collectively, the Paloma parties), sued Divinity, its former employees (Mitch Epps, Justin Hunter, Alexander "Alex" Stevens, and Melissa Stevens; collectively, the former employee defendants), and Divinity's owners (Jason Campbell, Jay Campbell, and Mike Pena; collectively, the Divinity officers) for misappropriating trade secrets and breaching fiduciary duties.[1] The trial court granted the Divinity parties' traditional and no-evidence motions

---

[1] We refer to all defendants collectively as the Divinity parties.

for summary judgment, dismissing the Paloma parties' claims with prejudice. The Paloma parties appeal. We will affirm.

## BACKGROUND[2]

In fall 2021, Alex Stevens and Mitch Epps made plans to open their own hospice care business after working together in the industry for many years. At the time, the two worked together at Paloma, where Stevens served as the Senior Director of Operations and Epps was the Director of Business Development for Paloma's South region. Stevens and Epps reached out to their former colleague, Mike Pena, for guidance. Pena, who previously worked with Stevens and Epps at Paloma, now works for Divinity, a Houston-based hospice care provider that Pena co-owns with Jay Campbell and Jason Campbell.

In late 2021, Stevens and Epps met with Jason Campbell, Divinity's Vice President of Operations, and Pena at Divinity's Houston headquarters to discuss the proposed venture: an Austin-area Divinity hospice care business that Stevens and Epps would open and operate. By January 2022, the Divinity officers formally proposed a partnership agreement under which Divinity would provide start-up capital for the business, and Stevens and Epps would receive a salary and equity in the business. Under the agreement, Divinity would own 70% of the venture, and Stevens and Epps would each own half of the remaining 30% until the business achieved certain performance metrics, at which point the ownership split would adjust from 70/30 to 60/40. Among those metrics included an average daily patient census—the number of patients under Divinity's care—of at least 30 patients.

---

[2] The background facts are derived from the undisputed evidence in the summary-judgment record, unless otherwise noted.

Stevens, Epps, and the Divinity officers executed the agreement for the Austin-based Divinity venture on February 7, 2022. Meanwhile, as their plans progressed, Stevens and Epps continued working at Paloma.[3] During this time, Stevens shared news of the upcoming business with Justin Hunter, Paloma's licensed vocational nurse case manager for its Round Rock office, with whom Stevens had worked in the hospice-care industry for over ten years. After learning about the new Divinity venture, Hunter asked to join, and Stevens agreed.

Between late February 23 and early morning February 24, Stevens, Epps, and Hunter, plus Melissa Stevens[4] (Paloma's office manager for its Round Rock office) resigned from their positions at Paloma effective immediately to join Divinity, which began its Williamson County operations on February 24. Gibson later attested that all of Paloma's other Round Rock location employees resigned abruptly, leaving Daniel Guck, Paloma's Director of Nursing for the Round Rock location, as the only local Paloma employee to care for its existing 34 hospice patients (until Guck also left Paloma for Divinity in mid-March).

Patients transferred from Paloma to Divinity, too. On February 24, six patients signed informed consent forms transferring their care from Paloma to Divinity. Gibson reported that the total transfers amounted to "at least a quarter" of Paloma's census.

Just over a week after the former employee defendants resigned, the Paloma parties filed this lawsuit. The Paloma parties alleged violations of noncompete or non-solicitation agreements, breaches of fiduciary duties, and misappropriations of trade secrets by the former employee defendants. The Paloma parties contended the Divinity officers aided and abetted the

---

[3] Stevens later testified that months prior, he told Nair about the possibility of starting his own hospice business in competition with Paloma, which he said Nair replied was "fine."

[4] Melissa Stevens and Alex Stevens are married.

former employee defendants' breaches of fiduciary duties. In support of their claims, the Paloma parties maintained that the former employee defendants received Paloma's employee handbook, personnel policies, and non-solicitation agreement, and that each former employee defendant had agreed that for 12 months after leaving Paloma, they would not solicit competitive business from Paloma's clients or attempt to recruit any Paloma employee to act against its interests. The Paloma parties alleged on information and belief that the former employee defendants removed records from their personnel files, including the non-solicitation agreement, to "sanitize" their records before their departure. Similarly, the Paloma parties complained that the former employee defendants reset their work computers to factory settings. The Paloma parties also alleged that just before resigning, Alex Stevens copied and printed various records, including patient lists and at least one patient's plan of care, and the former employee defendants purportedly destroyed evidence by deleting files from their computers and phones. The Paloma parties sought injunctive relief, disgorgement of Divinity's profits, and attorney's fees.

The trial court denied the Paloma parties' request for a temporary restraining order. After the parties engaged in some discovery but before the Paloma parties took depositions of the former employee defendants, the Divinity parties moved for summary judgment on all the Paloma parties' claims, attaching as support the Paloma parties' responses to requests for production. Specifically, the Divinity parties emphasized that the former employee defendants had not signed a noncompete agreement. Without a noncompete agreement, the Divinity parties argued that the former employee defendants had not breached a common law fiduciary duty owed to Paloma and thus the aiding-and-abetting claims against the Divinity officers must also fail. The Divinity parties also maintained there are no trade secrets at issue in this case as a matter of law under the definitions provided by the Texas Uniform Trade Secrets Act (TUTSA).

4

In addition to responding to the merits of the Divinity parties' motion for summary judgment, the Paloma parties sought a continuance of the hearing on the motion. A ruling on that motion does not appear in the record; however, the trial court held a hearing on the Divinity parties' motion for summary judgment, made evidentiary rulings based on the Divinity parties' objections to the Paloma parties' summary-judgment evidence, and granted summary judgment on the claims regarding violations of a noncompete agreement, the breach of fiduciary duty claims against the former employees, and the aiding-and-abetting claims against Divinity's officers. The court denied summary judgment on the misappropriation-of-trade-secrets claim.

After additional discovery, including depositions of the former employee defendants, the Paloma parties filed an amended petition reasserting the misappropriation-of-trade-secrets claim and adding "breach of duty of loyalty and civil theft of property" claims. The Divinity parties filed a second motion for summary judgment on the remaining claims on both traditional and no-evidence grounds, reiterating their argument that there are no trade secrets in this case as a matter of law. The Divinity parties also attached declarations made by each of the former employee defendants as evidence, urging that their declarations affirmatively established that they did not misappropriate any of Paloma's confidential information, let alone any trade secrets.

After the Paloma parties filed their response (which appended, among other documents, deposition transcripts of the former employee defendants, Paloma's business records, and patient transfer records) and before a hearing on the motion, the Paloma parties filed additional evidence, including evidence filed under seal according to the parties' agreed protective order.

However, the Divinity parties moved to strike much of the Paloma parties' summary-judgment evidence, arguing it was not timely served.[5]

After a hearing, the trial court struck some of the Paloma parties' summary-judgment evidence, including both of Gibson's declarations supporting the Paloma parties' opposition to summary judgment and exhibits to the same. The trial court granted the Divinity parties' summary-judgment motion and entered final judgment in their favor. The Paloma parties filed a motion for leave to refile the struck evidence, sought reconsideration of the summary-judgment motion, and moved for a new trial, all of which the trial court denied. The Paloma parties appeal.

## DISCUSSION

In three issues, the Paloma parties argue the trial court erred by denying their motion to continue the first summary-judgment hearing, granting the Divinity parties' first summary-judgment motion on the noncompete and breach of fiduciary duty claims, and granting the Divinity parties' second summary-judgment motion on the trade-secrets claims. The Paloma parties also challenge evidentiary rulings associated with the first summary-judgment motion.

---

[5] Specifically, the Divinity parties contended the evidence was served four days before the summary-judgment hearing and was thus untimely under Texas Rule of Civil Procedure 166a(c) and the parties' Rule 11 agreement extending that deadline by two days. The Divinity parties also moved to strike documents as inadmissible on other grounds.

## I. The trial court did not abuse its discretion by denying the Paloma parties' motion to continue the first summary-judgment hearing.

In the Paloma parties' first issue, they contend the trial court abused its discretion by denying their motion to continue the Divinity parties' first motion for summary judgment.[6] The Paloma parties argue the trial court should have granted the continuance so they could depose the former employee defendants in support of their opposition to summary judgment. The Paloma parties also maintain the continuance was necessary to adequately review documents beyond the ten-day extension the Divinity parties agreed to after producing unredacted versions of certain documents. The Divinity parties counter that the trial court did not abuse its discretion in denying the continuance because, among other things, the Paloma parties did not comply with the requirements of Rule 166a(g) by filing an affidavit or verified motion to support their request.

A party opposing a traditional motion for summary judgment may seek a continuance of the hearing on the motion so discovery can be completed. Tex. R. Civ. P. 166a(g). The party seeking a continuance must file an affidavit or verified motion explaining the need for additional discovery and why a continuance is necessary. *De Anda v. Jason C. Webster, P.C.*, No. 14-17-00020-CV, 2018 WL 3580579, at *4 (Tex. App.—Houston [14th Dist.] July 26, 2018, pet. denied) (mem. op.) (citing *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996)). We review a trial court's denial of a motion for continuance for abuse of discretion. *Chambers v. Levbarg*, No. 03-98-00138-CV, 2000 WL 217879, at *4 (Tex. App.—Austin Feb. 25, 2000, no pet.) (mem. op.) (citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986)).

---

[6] Though the record does not contain an express ruling on the motion, the trial court implicitly denied the request for a continuance by hearing the Divinity parties' motion for summary judgment. *See* Tex. R. App. P. 33.1(a)(2)(A); *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003) ("Consistent with Rule 33.1(a)(2)'s language, we have previously recognized that an implicit ruling may be sufficient to present an issue for appellate review.").

Among the factors an appeals court considers in determining whether the trial court abused its discretion include (1) the length of time the case has been on file, (2) the materiality of the discovery sought, and (3) whether due diligence was exercised in obtaining the purportedly necessary discovery. *Levinthal v. Kelsey-Seybold Clinic, P.A.*, 902 S.W.2d 508, 510 (Tex. App.—Houston [1st Dist.] 1994, no writ).

The Paloma parties have not established the trial court abused its discretion in denying their motion for continuance because they did not support the request with an affidavit or verified motion. *See* Tex. R. Civ. P. 166a(g) ("Should it appear *from the affidavits* of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." (emphasis added)); *Tenneco*, 925 S.W.2d at 647 ("When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance."). Because the Paloma parties did not comply with Rule 166a(g), we cannot say the trial court abused its discretion by declining to grant a continuance under these circumstances, in which the case had been on file for over six months and the parties had engaged in discovery. *See Kroger Specialty Infusion CA, LLC v. Sturns*, No. 05-22-01276-CV, 2024 WL 2205660, at *3 (Tex. App.—Dallas May 16, 2024, no pet.) (mem. op.) (concluding trial court did not abuse discretion by ruling on summary-judgment motion when party seeking continuance failed to file affidavit explaining need for further discovery or verified motion for continuance); *see also Buholtz v. Field*, No. 03-17-00232-CV, 2018 WL 700058, at *4 (Tex. App.—Austin Jan. 31, 2018, pet. denied) (mem. op.) (collecting cases and determining trial court did not abuse its discretion by ruling

8

on summary-judgment motion filed six months after plaintiff sued); *Carter v. MacFadyen*, 93 S.W.3d 307, 311 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (deciding trial court did not abuse discretion in denying motion for continuance when "local dockets, scheduling practices, disruptive weather, the assumptions of the bar, and a myriad of other factors may affect an 'adequate time for discovery'").

We overrule the Paloma parties' first issue.

**II.     The trial court correctly granted summary judgment on each of the Paloma parties' claims.**

In the Paloma parties' second and third issues, they maintain the trial court erred by granting the Divinity parties' summary-judgment motions. Specifically, the Paloma parties contend the trial court improperly granted the Divinity parties' first summary-judgment motion—on the noncompete and breach of fiduciary duty claims—because it failed to consider the evidence in the light most favorable to the Paloma parties, including evidence it contends should not have been struck. Likewise, the Paloma parties argue the trial court should not have granted the Divinity parties' second motion for summary judgment on the remaining trade-secrets claims because the Paloma parties contend that they provided sufficient evidence to raise a genuine issue of material fact for each element.

**A.  Standard of review**

To prevail on a traditional motion for summary judgment, the movant must establish that there is no genuine issue as to any material fact such that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In contrast, a no-evidence motion for summary judgment must be granted if the movant alleges that there is no evidence of one or more elements of a claim or defense on which the nonmovant bears the burden of proof at trial, and in

response, the nonmovant fails to produce summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i); *Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 153 (Tex. App.—Austin 2017, pet. denied) (citing *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006)). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not create a genuine issue of material fact "if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012).

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). "When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). "A party may negate each ground by raising separate issues 'or asserting a general issue that the trial court erred in granting summary judgment and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted.'" *Id.* at 227 (quoting *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied)). While "[a] general statement" arguing that the trial court erred by

10

granting the motion for summary judgment "may be sufficient to allow argument on all possible grounds that the summary judgment motion was granted," the appealing party must still brief those arguments on appeal or else we cannot properly reverse summary judgment on those grounds. *Id.*; *see* Tex. R. App. P. 38.1(i). The record for our review is limited to summary-judgment evidence that was before the trial court. *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 742 (Tex. App.—El Paso 2013, no pet.) (citing *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *see* Tex. R. Civ. P. 166a(c), (d).

### B. Noncompete-agreement claims

The Paloma parties contend the trial court erred by granting summary judgment in the Divinity parties' favor on their claims that the former employee defendants violated noncompete agreements.

In moving for summary judgment on these claims, the Divinity parties argued the former employee defendants—who were Paloma's at-will employees—are not bound to any covenant not to compete, and the Paloma parties failed to produce any signed written agreements supporting its position that they were. To the extent that the Paloma parties attempted to rely on an agreement not signed or reduced to writing, the Divinity parties maintained the statute of frauds would prohibit a noncompete agreement effective upon an employee's hire and extending twelve months after his termination. *See* Tex. Bus. & Com. Code § 26.01(a), (b)(6).

In response, the Paloma parties provided the trial court with an affidavit from Gibson, outlining allegations that the former employee defendants had "unfairly 'piggyback[ed]' on [Paloma's] years of continuous development, research, and expense" by using Paloma's

11

confidential information for their own benefit, violating the restrictive covenants each entered with Paloma and their confidentiality agreements. Gibson further alleged that in a conversation she had with Epps, he "admitted that they planned to take the patients to Divinity Hospice, which was part of their compensation package, and that neither he nor Pena were concerned about non-compete law issues."

The Paloma parties did not produce a standalone signed noncompete or non-solicitation agreement for any of the former employee defendants. Instead, the Paloma parties stated that "upon reasonable belief" they suspected that the former employee defendants "destroyed those documents by purging them from their personnel files before leaving Paloma's employment." The Paloma parties urged this raised "spoliation issues" and "[a]t a minimum, a colorable fact issue."

Further, the Paloma parties maintained that when the former employee defendants were hired, they "acknowledged that they reviewed and understood the contents of the [Paloma employee] handbook, which contained statements regarding their obligations under covenants not to solicit employees and non-disclosure of confidential and proprietary information." The Paloma parties supported these allegations with signed employee handbook acknowledgments from each of the former employee defendants, as well as Gibson's testimony that the former employee defendants had agreed to abide by the terms in Paloma's employee handbook, including policies prohibiting the disclosure of confidential information and the provision of services to any of Paloma's patients for one year after terminating their employment with Paloma. The latter, which the Paloma employee handbook titles a "Non-Solicitation Agreement," further provides:

> All employees are required to sign and adhere to the rules of a Non-Competition Agreement as a condition of employment. This agreement is not considered an

12

employment contract. This policy, like any policy to which you agree to with your signature, should be fully understood by each employee. If you do not fully understand the implications of this agreement, please consult your supervisor or [sic] before accepting the terms of this agreement with your signature.

However, the Paloma parties did not produce a separate noncompete agreement for any of the former employee defendants.

On appeal, the Paloma parties challenge the trial court's evidentiary rulings striking specific statements in Gibson's affidavit concerning the purported noncompete agreement and whether the former employee defendants agreed to be bound by such terms. The Paloma parties contend that the documents referred to in these statements are business records and that because the Paloma parties submitted a business records declaration as part of their summary-judgment opposition, statements concerning these documents are exceptions from the rule against hearsay. The Paloma parties also maintain these evidentiary rulings demonstrate the trial court failed to consider the evidence in the light most favorable to the nonmovant and draw reasonable inferences in their favor. They also object specifically to the trial court's striking of certain statements by Gibson as conclusory.

A covenant not to compete, or a noncompete agreement, "protect[s] the investment an employer has made in an employee, ensuring that the costs incurred to develop human capital are protected against competitors who, having not made such expenditures, might appropriate the employer's investment." *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 328 (Tex. 2014) (citing *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 769 (Tex. 2011)). But "covenants limiting employees' professional mobility are unlawful restraints of trade . . . unless they fall within the exception created by the Covenants Not to Compete Act." *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 850 (Tex.

13

App.—Houston [14th Dist.] 2017, no pet.) (citing *Marsh USA*, 354 S.W.3d at 768, 770); *see generally* Tex. Bus. & Com. Code §§ 15.50–.52 (Covenants Not to Compete Act).

"The hallmark of enforcement is whether or not the covenant is reasonable." *Marsh USA*, 354 S.W.3d at 777. "A noncompetition agreement is enforceable if it is reasonable in time, scope and geography and, as a threshold matter, 'if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made.'" *Id.* at 771 (quoting Tex. Bus. & Com. Code § 15.50(a)). Courts engage in a two-step inquiry to determine this threshold requirement by asking (1) "whether there is an 'otherwise enforceable agreement' between the parties," and (2) if so, "whether the covenant is 'ancillary to or part of' that agreement." *Id.* (quoting *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009)). "The 'otherwise enforceable agreement' requirement is satisfied when the covenant is 'part of an agreement that contained mutual non-illusory promises.'" *Id.* at 773 (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006)). While an otherwise enforceable agreement can arise from at-will employment, the noncompete agreement must be supported by consideration. *American Surgical Assistants, Inc. v. Villareal*, No. 13-19-00221-CV, 2020 WL 6052550, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2020, no pet.) (mem. op.) (citing *Sheshunoff*, 209 S.W.3d at 648, 651). Sufficient consideration may include "trade secrets, confidential information or goodwill[.]" *Marsh USA*, 354 S.W.3d at 775.

First, regarding the evidentiary issues, the Paloma parties fail to challenge each evidentiary objection raised regarding statements in Gibson's affidavit. That is, the Divinity parties urged multiple objections to the excluded statements in Gibson's affidavit, but the Paloma parties provide insufficient argument on appeal to address each objection to each statement the Paloma parties contend should not have been struck—even though the trial court granted the

14

challenged objections. But we review evidentiary rulings for abuse of discretion and "must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Warner Bros. Entm't Inc. v. Jones*, 538 S.W.3d 781, 817 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Because the Paloma parties have not provided argument for each raised objection, we cannot conclude the Paloma parties have established the trial court abused its discretion in striking certain statements from Gibson's affidavit, nor can we conclude those evidentiary rulings constitute reversible error. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *id.* R. 44.1(a)(1) (noting standard for reversible error on appeal).

Similarly, even if we assume the trial court considered but rejected the Paloma parties' spoliation argument, the Paloma parties have not established that the trial court erred in doing so. *See Mangham v. YMCA of Austin, Texas-Hays Cmtys.*, 408 S.W.3d 923, 930–31 (Tex. App.—Austin 2013, no pet.) (discussing spoliation "instruction" in summary-judgment context, "where there is no jury to instruct, and judges are already bound to view evidence in a light most favorable to nonmovants and resolve doubts in their favor"). We review the denial of a spoliation "instruction" for abuse of discretion and reverse only if the trial court's denial was arbitrary or unreasonable. *Id.* at 931 (citing *Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998)). In the summary-judgment context, a spoliation presumption—that is, a presumption that destroyed evidence would not have been favorable to its destroyer—may be appropriate when a party has deliberately destroyed evidence or failed to either produce evidence or explain the evidence's nonproduction. *See id.* at 930 (citing *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721–22 (Tex. 2003)). Here, if the trial court agreed with the Paloma parties' spoliation argument, it would

15

have presumed that the unavailable evidence is unfavorable to the former employee defendants. *See id.* But the Paloma parties were not entitled to a spoliation presumption because they did not establish that the former employee defendants intentionally or negligently destroyed documents. Though Gibson testified that the former employee defendants' personnel files "should have contained" signed non-solicitation agreements, there is no evidence establishing that the former employee defendants deliberately or negligently destroyed those documents.

Thus, there is no evidence in the record supporting the Paloma parties' argument that the former employee defendants signed and were bound by a covenant not to compete. Though the Paloma parties insist each of the former employee defendants acknowledged receipt of Paloma's employee handbook—which it maintains "cross-referenced and reaffirmed" the non-solicitation agreement—that document does not amount to an enforceable noncompete agreement because it does not surpass the threshold inquiry: it is not "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." *Marsh USA*, 354 S.W.3d at 771 (quoting Tex. Bus. & Com. Code § 15.50(a)). The Paloma employee handbook repeatedly emphasizes that "the policies and procedures contained in the employee handbook are intended as guidelines only and do not create any type of contract of employment."[7] Thus, to the extent that the Paloma parties argue its employee handbook acknowledgment created contractual obligations sufficient to meet this threshold requirement, the handbook's plain language refutes that assertion. And even without this language disclaiming contractual obligations, the Paloma parties failed to establish the acknowledgment is supported by sufficient consideration to support an enforceable noncompete agreement under the Covenant Not to Compete Act. *See* Tex. Bus. & Com. Code

---

[7] The Paloma parties included as evidence additional signed paperwork from the former employee defendants reiterating this language as well.

16

§ 15.50(a); *Lazer Spot, Inc. v. Hiring Partners, Inc.*, 387 S.W.3d 40, 47 (Tex. App.—Texarkana 2012, pet. denied) (finding that "only implied consideration" of at-will employment was insufficient in contract that included no express consideration and identified "neither confidential, proprietary, or trade secret information to be divulged, nor any goodwill or specialized training to be provided the employees in consideration for signing the contracts"); *see also American Surgical Assistants*, 2020 WL 6052550, at *5 (noting that confidential patient information is protected by the Health Insurance Portability and Accountability Act such that no confidentiality agreement through employer was necessary to protect that information).

We overrule the Paloma parties' second issue regarding the noncompete-agreement claims.

### C. Breach of fiduciary duty and related aiding-and-abetting claims

The Paloma parties also argue the trial court erred by granting summary judgment in the Divinity parties' favor on the breach of fiduciary duty and aiding-and-abetting claims.

In moving for summary judgment, the Divinity parties argued the former employee defendants were at-will employees and thus did not owe an absolute duty of loyalty to Paloma. Absent a noncompete agreement, the Divinity parties maintained it was not a breach of fiduciary duty for the former employee defendants to take active steps to leave their employment with Paloma to work for a competitor. And to the extent that the Paloma parties assert a breach of fiduciary duty claim based on the purported misappropriation of trade secrets, the Divinity parties urged that TUTSA preempts it. As to claims against the Divinity officers, the Divinity parties argued that the Divinity officers had no relationship with and thus owed no fiduciary duty to Paloma. Likewise, the Divinity parties contended that because they conclusively established the

17

former employee defendants did not breach any fiduciary duties owed to Paloma, the claim that the Divinity officers aided and abetted the former employee defendants in breaching those purported duties fails too.

The Paloma parties maintain the former employee defendants breached their duty of loyalty by "en masse resignations and diversion of many patients to Divinity and their leaving other patients without care, which required [Paloma] to reassign staff from other agencies on an emergency basis." The Paloma parties also urge that the former employee defendants breached a fiduciary duty owed to Paloma through their breach of "contractual obligations not to use Paloma's confidential information and trade secrets without permission," by "ordering and conversion of supplies and medications for former patients charged to and paid by Paloma,"[8] through "the solicitation of others to resign and join Divinity," and through "the intentional interference with [Paloma's] business."

To prove a breach of fiduciary duty, a plaintiff must demonstrate the existence of a fiduciary duty, a breach of that duty, causation, and damages. *Parker*, 514 S.W.3d at 220. Because an employer-employee relationship is "a species of the formal principal-agent relationship," "employment relationships may impose *some* fiduciary duties." *Salas v. Total Air Servs., LLC*, 550 S.W.3d 683, 690 (Tex. App.—El Paso 2018, no pet.) (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201–02 (Tex. 2002)); *see also Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 WL 4231232, at *9 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem. op.) (noting that employee may owe limited fiduciary duty to employer (citing *Johnson*, 73 S.W.3d

---

[8] Gibson accused the former employee defendants of misconduct based on her discovery after the former employee defendants resigned "that thousands of dollars' worth of supplies and medication were ordered for the Round Rock location but were inexplicably missing."

18

at 201)). Specifically, an employee may not "(1) appropriate the company's trade secrets; (2) solicit the former employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information."[9] *Nallia*, 2019 WL 4231232, at *9 (citing *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762–63 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)).

However, an employee's duty is not unlimited: An employee "may use his general skills and knowledge obtained through employment to compete with the former employer." *Wooters*, 513 S.W.3d at 763. To that end, an employee "may secretly join with other employees to plan a competing company without violating any duty to his employer." *Id.*; *see Shufood LLC v. Liu*, No. 01-21-00463-CV, 2024 WL 4628402, at *15 (Tex. App.—Houston [1st Dist.] Oct. 31, 2024, no pet.) (mem. op.) (collecting cases and holding that "[a] fiduciary, however, does not violate the duty of loyalty by merely planning to compete against its principal in the future").

To decide whether the Paloma parties raised a genuine issue of material fact regarding the former employee defendants' solicitation of coworkers or patients during their employment with Paloma, we look to the definition of "solicit": that is, "to make petition to: entreat, importune, concern; to approach with a request or a plea (as in selling or begging); to move to action; serve as an urge or incentive: incite; to strongly urge (as one's cause or point): insist upon; to endeavor to obtain by asking or pleading; and to seek eagerly or actively." *In re Athans*, 478 S.W.3d 128, 135 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) (quoting Webster's Third New Int'l Dictionary 2169 (1993)) (capitalization and internal quotation marks omitted).

---

[9] Though not applicable here, parties may also "contractually agree to limit or expand fiduciary duties that would ordinarily exist under the common law." *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 384 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *National Plan Adm'rs v. National Health Ins.*, 235 S.W.3d 695, 703 (Tex. 2007)).

19

"Put another way, 'the commonly understood meaning of solicit includes more than merely to ask.'" *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 381 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (quoting *In re Athans*, 478 S.W.3d at 135).

Gibson attested that "[Alex] Stevens solicited the rest of the now-former employees of Paloma Hospice to join him" at Divinity and that Epps "admitted that [he and Stevens] planned to take the patients to Divinity Hospice[.]" This evidence, without more, is insufficient to raise a genuine issue of material fact regarding whether, during their employment with Paloma, the former employee defendants asked—let alone "did more than merely ask"—Paloma employees or patients to transfer to Divinity. *Id.* Instead, as to Paloma's employees, the record demonstrates that the former employee defendants' actions were consistent with what Texas law permits at-will employees to do: "mutually agreeing among themselves to plan and prepare secretly to compete with their employer." *Id.* at 382 (citing *Johnson*, 73 S.W.3d at 201); *see Wooters*, 513 S.W.3d at 763. As to Paloma's patient transfers, the record contains no evidence of communication between the former employee defendants during their employment with Paloma and Paloma's then-patients regarding the planned Divinity venture.[10] Thus, the Paloma parties failed to raise a fact issue on

---

[10] Indeed, the Paloma parties failed to establish that the former employee defendants communicated with Paloma patients about transferring to Divinity even after they resigned. For example, MaryJane Kesler, a licensed vocational nurse employed by an assisted living facility at which both Paloma and Divinity provide hospice care, testified: "From my recollection, . . . when I found out that Alex [Stevens] is no longer going to be with Paloma, I notified my nurses to make sure they notified the families because our families . . . have Alex's cell phone number, so they needed to know -- we need to notify the families that, 'Hey, you cannot call Alex anymore.' We needed to let them know that there's a staffing changes, and . . . it's just the right thing to do. You know, our families are very close to all our outside healthcare providers." When asked whether patients' families had the option to stay with Paloma or transfer to Divinity, Kesler replied, "we tell them all the hospices that come to our community, and we allow them to choose which hospice they want to go with." Kesler's testimony suggests that the assisted living facility—not the former employee defendants or any other of the Divinity parties—informed patients of the staffing changes.

20

this point. *Cf. Dockside Marine, L.L.C. v. Walker*, No. 09-23-00047-CV, 2024 WL 3220404, at *8 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.) (concluding plaintiff-employer raised fact issue as to former employee's breach of fiduciary duty when former employee admitted in deposition that he spoke to customers and suppliers about opening his own competing business while employed by plaintiff-employer).

Likewise, the Paloma parties failed to raise a fact issue as to whether the former employee defendants breached a fiduciary duty by carrying away Paloma's confidential information. Though Gibson attested the former employee defendants "had access to" confidential information—including "Medicare data, ADRs, inside information, employee files, financial data, license data, future planning, etc."—the Paloma parties have not created a fact issue as to whether any of the former employee defendants took confidential information from Paloma. Indeed, Gibson's testimony was only that Paloma's printer logs reflect that Alex Stevens printed documents related to Paloma's patients "in the office," and Paloma offers no other evidence that the former employee defendants "carried away" confidential information outside the Paloma parties' request for a spoliation presumption. *See, e.g.*, *W.R. Grace & Co.-Conn. v. Posey*, No. 03-07-00184-CV, 2007 WL 2462003, at *5 (Tex. App.—Austin Aug. 30, 2007, no pet.) (mem. op.) (finding, on review of temporary injunction, no abuse of discretion when appellant cited no evidence showing former employee "actually used or disclosed" any of its confidential information in new role).

To the extent the Paloma parties' common law breach of fiduciary duty claim is based on misappropriation of trade secrets, TUTSA displaces that claim.[11] Tex. Civ. Prac. & Rem.

---

[11] We address the Paloma parties' TUTSA claim below.

21

Code § 134A.007(a); *see Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 533 (Tex. App.—San Antonio 2020, pet. denied) ("When the gravamen of a common law claim duplicates a TUTSA claim, the common law claim is preempted.").

Finally, even assuming a civil aiding-and-abetting claim is actionable in Texas, it would require a breach of a fiduciary duty. *See Parker*, 514 S.W.3d at 224 (noting Texas Supreme Court "has not expressly decided whether Texas recognizes a cause of action for aiding and abetting"). Absent a genuine issue of material fact that any of the former employee defendants breached a fiduciary duty to Paloma, the trial court properly granted summary judgment in favor of the former employee defendants on the breach of fiduciary duty claim and the Divinity officers on the aiding-and-abetting claim.

We overrule the Paloma parties' second issue regarding its breach of fiduciary duty and related aiding-and-abetting claims.

### D. Trade-secrets claims

In their third issue, the Paloma parties argue the trial court's order granting summary judgment on the trade-secrets claims cannot be sustained on the record.

In moving for summary judgment, the Divinity parties argued there is no evidence of the essential elements of a misappropriation of trade secrets claim. In support, the Divinity parties cited to the statutory definition of a "trade secret," arguing that the information the Paloma parties claim was misappropriated is not a trade secret as a matter of law. *See* Tex. Civ. Prac. & Rem. Code § 134A.002. The Divinity parties maintain that while hospice care involves protected healthcare information, the Paloma parties do not own that information, keep it secret, or derive independent economic value from it. Likewise, the Divinity parties urged that Paloma's "patient

22

poaching" case theory contravenes the patients' absolute statutory right to choose their hospice provider.[12] *See* 42 U.S.C. § 1395a. The Divinity parties also pointed to the former employee defendants' declarations affirming that they did not misappropriate any trade secrets and argued the Paloma parties' "information and belief" pleading to the contrary was insufficient to raise a genuine issue of material fact. And to the extent that the Paloma parties asserted a civil theft claim arising from a misappropriation of trade secrets, the Divinity parties maintained TUTSA preempts such a claim. *See* Tex. Civ. Prac. & Rem. Code § 134A.007(a).

The Paloma parties argue the former employee defendants "took the following trade secrets from Paloma to guarantee the viability and profitability of their new competing business": client lists; client plans of care; supplier names and pricing; leasing terms; and staff compensation. The Paloma parties maintain these items constitute trade secrets under TUTSA. Gibson characterized Paloma's business processes and documents as "trade secrets" that are "extremely valuable in that they allow [Paloma] to greatly reduce traditional training costs" and provide Paloma with "a huge competitive advantage in the industry."

A plaintiff seeking to prove a misappropriation of trade secrets must establish "(1) the existence of a trade secret; (2) acquisition of the trade secret through a confidential relationship or discovery of it by improper means; (3) use of the trade secret without authorization; and (4) resulting damages to the plaintiff." *Nallia*, 2019 WL 4231232, at *8 (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied)). TUTSA defines a "trade secret" as:

---

[12] All patients who transferred from Paloma to Divinity's care identified in this lawsuit receive Medicare benefits.

23

all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). TUTSA likewise defines a trade secret "owner" as "the person or entity in whom or in which rightful, legal, or equitable title to, or the right to enforce rights in, the trade secret is reposed." *Id.* § 134A.002(3-a). Though TUTSA has multiple definitions of "misappropriation"—and the Paloma parties have not specified from which definition their claims arise—at minimum, it requires "disclosure or use of a trade secret without express or implied consent." *Id.* § 134A.002(3)(B).

To be sure, "a trade secret must be a secret." *Reilly v. Premier Polymers, L.L.C.*, No. 14-19-00336-CV, 2020 WL 7074253, at *5 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, pet. dism'd by agr.) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code § 134A.002(6)(a)). While TUTSA does not limit "secrecy" solely to confidentiality, it requires that "the information is not generally known or readily ascertainable by independent investigation." *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 134A.002(6); *Trilogy Software*, 143 S.W.3d at 467 ("Before information can be a 'trade secret,' there must be a substantial element of secrecy."); *see also Shufood LLC*, 2024 WL 4628402, at *17 ("This standard requires that the owner of the trade secret take reasonable measures to keep the information secret but does not require proof that the alleged trade

24

secrets have been held in absolute secrecy . . . ." (citing *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 266 (Tex. 2021))).

However, the Paloma parties failed to provide any evidence as to the secrecy of Paloma's supplier names and pricing, leasing terms, staff compensation, or other business processes or documents. The Paloma parties' assertions that the employee handbook broadly classified "all verbal and written communications between the parties relating to the business of Paloma Hospice" as confidential is insufficient to create a fact issue as to whether the Paloma parties took reasonable measures to keep this information secret. *See Scientific Mach. & Welding, Inc. v. Rose*, No. 03-20-00564-CV, 2022 WL 850409, at *3 (Tex. App.—Austin Mar. 23, 2022, no pet.) (mem. op.) ("On this record, and viewing the evidence in the light most favorable to [the non-movant], no reasonable factfinder could conclude that [the non-movant] took 'reasonable measures under the circumstances' to keep the information at issue secret" when record showed information was not password protected, non-movant permitted transmission of information to third parties, and non-movant failed to identify enforceable non-disclosure agreement or any internal documents designating information confidential (quoting Tex. Civ. Prac. & Rem. Code § 134A.002(6))); *Phuong Nguyen v. ABLe Commc'ns, Inc.*, No. 02-19-00069-CV, 2020 WL 2071757, at *17 (Tex. App.—Fort Worth Apr. 30, 2020, no pet.) (mem. op.) (concluding party asserting TUTSA claims offered no evidence to explain how, among other things, employees' credentials and contact information was information not generally known or readily ascertainable through proper means); *cf. Reilly*, 2020 WL 7074253, at *5 (finding, on TCPA motion to dismiss, sufficient factual basis that party asserting trade-secret misappropriation took steps to maintain secrecy by limiting employee access and requiring login credentials).

25

Finally, the Paloma parties did not produce evidence that raises a genuine issue of material fact as to whether the former employee defendants misappropriated Paloma's client list or any client plans of care.[13] Though some of Paloma's patients did transfer to Divinity shortly after Divinity began operations, the Paloma parties failed to raise a fact issue as to whether Divinity received those patients and their protected healthcare information by virtue of the former employee defendants' misappropriation—as opposed to the patients' decisions to transfer hospice care providers to retain the same healthcare professionals. *See GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018) ("The mere fact of AmSpec's ability to compete does not itself suggest that AmSpec did so by misappropriating trade secrets."); *Lakeway Reg'l Med. Ctr., LLC v. Lake Travis Transitional LTCH, LLC*, No. 03-15-00025-CV, 2017 WL 672451, at *14 (Tex. App.—Austin Feb. 17, 2017, pet. denied) (mem. op.) (noting nonmovant's summary judgment response "simply speculating that [movants] must have used [non-movant's] confidential information, did no more than create a 'mere surmise or suspicion' of use or disclosure of [non-movant's] trade secrets"); *cf. Sturns*, 2024 WL 2205660, at *7 ("[E]ven if there was competent summary judgment evidence to establish that Sturns serviced some of the same clients at Bioplus that she serviced at Kroger, this does not establish use of Kroger's confidential information sufficient to defeat summary judgment."); *Medical RX Servs. LLC v. Georgekutty*, No. 02-21-00017-CV, 2021 WL 6069102, at *8 (Tex. App.—Fort Worth Dec. 23, 2021, no pet.) (mem. op.) (finding plaintiffs' affidavit testimony that defendants generally obtained business advantage through plaintiffs' unspecified confidential information to be "no more than a scintilla

---

[13] Because the Paloma parties failed to raise a fact issue as to whether the Divinity parties misappropriated client plans of care, we need not decide the extent to which—if at all—Paloma could be considered the "owner" of its patients' protected healthcare information under TUTSA.

26

of evidence" that defendants misappropriated trade secrets); *Central States Logistics, Inc. v. BOC Trucking, LLC*, 573 S.W.3d 269, 280–81 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (concluding that finding that defendant breached non-solicitation agreement, without more, was insufficient to establish misappropriation of trade secret).

Because the Paloma parties failed to raise a genuine issue of material fact on their trade-secrets claims, the trial court did not err in granting the Divinity parties' motion for summary judgment. We overrule the Paloma parties' third issue.

## CONCLUSION

We affirm the trial court's orders granting summary judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed

Filed:   January 24, 2025